**STATE of Minnesota, Respondent,**

v.

**Richard Gene STAGG, Appellant.**

No. C0–82–1217.

Supreme Court of Minnesota.

Jan. 13, 1984.

Rehearing Denied March 8, 1984.

Bruce Hartigan, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Kenneth W. Saffold, Sp. Asst. Atty. Gen., St. Paul, for respondent.

AMDAHL, Chief Justice.

Defendant was found guilty by a district court jury of a charge of intentionally aiding in the sale of an unregistered security, Minn.Stat. §§ 80A.08, 80A.22, 609.05, subd. 1 (1982). The trial court stayed imposition of sentence and placed defendant on 5 years' probation, conditioned on defendant's making restitution. On this appeal from judgment of conviction defendant raises issues of the sufficiency of the evidence to convict, the adequacy of the complaint, the propriety of admitting so-called *Spreigl* evidence, and the fairness of the prosecutor's closing statement to the jury. We affirm.

William Lohmeyer, formerly of Mountain Lake, Minnesota, now of Jenks, Oklahoma, was defendant's partner. Lohmeyer is a farmer who became a successful farm chemical salesman and pleaded guilty to a charge of selling an unregistered security. In 1977 he invested in an Oklahoma oil company after being solicited by defendant. Lohmeyer subsequently decided he wanted to establish his own oil company and obtained defendant's agreement to help him. Defendant's role was to get the new company incorporated in Delaware, prepare the prospectus, lease the land, do the engineering work, figure out cost factors, and establish a separate company to do the drilling under a contract with Lohmeyer's company. Lohmeyer's role was to sell the units in each well that the company drilled. Before Lohmeyer did any selling he contacted a Minneapolis attorney, who advised him that the securities would have to be registered in Minnesota and that it would cost a large amount of money. Lohmeyer testified that he told this to defendant but defendant's response was that 70% of the wells in the United States were unregistered and that bureaucrats do not want progress. Lohmeyer testified that a few days later he decided to go ahead with the operation without registering in Minnesota.

Lohmeyer had little difficulty in selling 32 or 34 units in each of four wells at approximately $6,000 a unit over a period of a number of months in 1978. His main sales technique was to contact farmers he had met in selling farm chemicals and invite them to meetings at his farm. At these meetings Lohmeyer would give a sales pitch, then would call defendant in Oklahoma and, using a speaker telephone, let defendant explain the drilling operation and answer questions. A number of investors went to Oklahoma to meet with defendant and he also gave individual sales pitches to some over the telephone. In selling the units in the four wells, Lohmey-

er took in a total of $770,850, of which $692,500 went to defendant's company.

*Spreigl* evidence admitted over defendant's objection at trial consisted of evidence that defendant had signed a consent cease and desist order in 1979 acknowledging violation of the registration requirement of the Oklahoma securities law in the period from November 15, 1976, to June 30, 1978. Defendant successfully objected to the admission of a default cease and desist order issued by Minnesota authorities regarding the sale of unregistered securities from January of 1976 through February of 1979.

■ We hold that the evidence was sufficient to show that defendant intentionally aided in the sale of an unregistered security. The main evidence establishing defendant's knowledge that the securities he helped to sell were unregistered was the testimony of Lohmeyer about what he told defendant after his meeting with the Minneapolis attorney, his testimony about defendant's response, and his testimony that a short time later he, Lohmeyer, decided to go ahead with the deal without registering. Lohmeyer's testimony suggested that defendant knew that the securities were unregistered. Registration is not only costly but it takes some time and presumably defendant, with his experience, was aware of that. Thus, even if Lohmeyer never expressly told him he was going ahead without registering, defendant must have known that that was the case. Beyond that, the prospectuses, which defendant was responsible for preparing, stated that the offer and sale had not been registered with or reviewed by the securities administrators of any state. Further, the evidence concerning defendant's extensive experience in the oil industry and the *Spreigl* evidence pointed to defendant's knowledge. In summary, we believe that the jury fairly and justifiably concluded from the evidence that defendant knew that the securities were unregistered but nonetheless aided Lohmeyer in their sale.

■ 2. Defendant's next contention is that the complaint was vague and confusing as to time. The general rule is that the complaint need not allege a particular date on which the offense was committed unless the day is a material ingredient of the crime. However, as stated in *State v. Waukazo*, 269 N.W.2d 373, 375 (Minn. 1978):

> Notwithstanding the general rule, there might be cases in which the allegations as to time in the indictment or complaint would be so vague under the circumstances as to make it impossible for a defendant to prepare his defense. Trial courts have inherent authority to exercise some discretionary control over these matters, and this court always has authority to reverse a conviction if it believes that the charge was so vague on the matter of time as to make it impossible for the defendant to defend himself.

■ Under Minn.R.Crim.P. 17.06, subd. 2, a defendant may raise any issue concerning the adequacy of a complaint by moving for relief as provided in R. 10.01. Rule 10.01 provides:

> Pleadings in criminal proceedings shall be by the indictment, complaint or tab charge and the pleas prescribed by these rules. Defenses, objections, issues, or requests which are capable of determination without trial on the merits shall be asserted or made before trial by a motion to dismiss or to grant appropriate relief.

Under Rule 10.03, a defendant's failure to so move means that the defendant is deemed to have forfeited the issue unless defendant can show good cause for not having so moved. *State v. Lehman*, 295 N.W.2d 264, 265 (Minn.1980).

Defendant apparently did not raise the issue of the adequacy of the complaint in a Rule 10.01 motion and he has not shown good cause for this failure. Instead, defense counsel waited until after the jury was sworn and jeopardy had attached and then moved to dismiss on this ground. Further, defendant has not shown in what way it was impossible for him to defend himself. Under the circumstances, we reject this contention.

3. Defendant's next contention is that the trial court prejudicially erred in admitting the *Spreigl* evidence concerning the consent cease and desist order issued against defendant by the Oklahoma securities department.

■ Minn.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In general, evidence of other crimes, wrongs, or acts is admissible if the evidence is clear and convincing that defendant participated in the other crimes, wrongs, or acts, if it is relevant and material to the state's case, and if the probative character of the evidence outweighs its potential for unfair prejudice. The converse of this is that the evidence is inadmissible if it is irrelevant to the state's case, if the sole purpose of its introduction is to show that the accused has a propensity to commit crimes, or if its potential for unfair prejudice outweighs its probative character.

■ The most common purposes for which evidence of this nature is admitted are to show intent or other mental state and to prove identity. Regardless of the purpose for which the evidence is admitted, there must be some relationship in time, location, or *modus operandi* between the crime charged and the other acts, wrongs, or crimes, and further, the direct or circumstantial evidence on the issue in question must be weak or inadequate. *State v. Billstrom*, 276 Minn. 174, 178–79, 149 N.W.2d 281, 284–85 (1967). The purpose of the requirement of close relationship in time, place or *modus operandi* is to help insure that the other-crime evidence being admitted is relevant.

■ Defendant's main arguments are (a) that the evidence that he committed the prior misconduct was not clear and convincing and (b) that the prior misconduct was not sufficiently similar to the alleged misconduct underlying the instant offense.

(a) Defendant argues that people often consent to orders such as this and admit wrongdoing just to avoid the expense and publicity of litigating the matter. This may be true, but we are not persuaded that that means that the evidence that defendant committed the acts alleged is not clear and convincing. We believe that a formal admission of this kind is strong evidence that the act admitted occurred. Under the circumstances, we conclude that the evidence that defendant violated the registration provisions of the Oklahoma securities statute was clear and convincing. This does not mean that the jury was required to accept such an admission as true in determining what significance to attach to the evidence. Defendant, for example, could have testified and given his version of why he consented to the order. He chose not to do so.

(b) Defendant's other basic contention is that the evidence of other acts, wrongs, or crimes related to conduct that was dissimilar to that with which he was charged. It is true that the conduct defendant admitted was somewhat different, but that fact alone does not persuade us that the evidence was not sufficiently relevant. We believe, as the trial court did, that the evidence bore on the issues of intent and knowledge, that is, on whether defendant knew that the securities he aided Lohmeyer in selling were unregistered and nonetheless went ahead and aided in the sales.

In conclusion, we hold that the trial court did not abuse its discretion in admitting this evidence.

■ 4. Defendant's final contention is that the prosecutor committed prejudicial misconduct in his closing argument when he made the following statement:

When you go through a criminal case, perhaps one of the most profound of all concepts that you initially hear is the concept of guilt beyond a reasonable

doubt. And indeed, ladies and gentlemen, that is one of the most profound of all your criminal justice system concepts.

I mean, however, that the State of Minnesota has never asked any jury at any time to convict any defendant unless it was convinced of that defendant's guilt beyond a reasonable doubt.

Defense counsel objected. The court responded by saying:

I think he was just stating the law. It says that this is what they've complied with. In any event, the jury has been instructed previously and will be instructed again that what the attorneys say to you is not evidence in this case and if they comment on the law and it differs from the law that I shall give you, you must disregard what they say. Of necessity, they will refer to the case in their arguments and you must accept it in that way and not as evidence or not as the law, if it differs from what I say.

It is not clear to us what the prosecutor's statement meant. Defense counsel apparently interprets the statement as meaning that the state never sought a conviction unless the *state* was convinced beyond a reasonable doubt of a defendant's guilt. Arguably, however, the prosecutor was simply saying that the state never would ask a jury to convict a defendant unless the *jury* was convinced of the defendant's guilt beyond a reasonable doubt. We are inclined to believe that the prosecutor meant the latter and, if so, the statement was somewhat innocuous. Even if defense counsel's interpretation of the statement is correct, we do not believe that it was prejudicial, given the proper instructions of the trial court that the fact that a complaint was filed is not evidence of the defendant's guilt and the trial court's instructions concerning proof beyond a reasonable doubt.

Affirmed.