**Robert HOLMES, Jr.,**
**Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C7-86-770.

Court of Appeals of Minnesota.

Oct. 21, 1986.

C. Paul Jones, State Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen. St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Mark S. Rubin, Asst. Co. Atty., Duluth, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING and CRIPPEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Robert Holmes, Jr. appeals from an order denying post-conviction relief [1] contending that: (1) the evidence was insufficient to support the jury's verdict; (2) the trial court abused its discretion when it admitted evidence of another crime and ruled that he could be impeached with his prior convictions if he testified; (3) he was denied a fair trial when the trial court read his aliases to the jury and commented on a juror's failure to vote; (4) he was entitled to a new trial based on newly discovered evidence; and (5) he was improperly sentenced. We affirm but modify appellant's sentence.

## FACTS

On August 20, 1984 appellant was charged with third degree criminal sexual conduct under Minn.Stat. § 609.344(c) (1984) for sexually assaulting R.B. in Duluth on October 12, 1983. Appellant avoided prosecution by using several aliases: he told R.B. his name was "Bill Williams" and used other names when later arrested in Duluth and Rochester, Minnesota. By the time St. Louis County identified appellant as "Bill Williams" his probation had been revoked on an earlier offense and he was in prison. On August 23, 1984, St. Louis County logged a detainer against appellant. He was transported to the St. Louis County jail on September 26, 1984 to stand trial.

At trial, R.B. testified that on October 11, 1983 she went to the Cove bar in Superior, Wisconsin. When the bar closed, she caught a ride back to Duluth with four men: Derek Weston, Peter Weygant, appellant, and a fourth man. R.B. went with them to appellant's apartment because she used marijuana and thought she could "get high." R.B. and Weston stayed at the apartment while appellant took Weygant and the other man home. When he returned, he discussed purchasing some marijuana with Weston.

Appellant, Weston, and R.B. drove to a house in Superior to obtain marijuana but were unsuccessful. Weston stayed in Superior and R.B. asked appellant to give her a ride home. She agreed to go to his apartment when he said he had some marijuana there. Appellant did not have any marijuana and told R.B. he would not give her a ride home until the next morning. She decided to stay because it was cold out and she did not want to walk home.

Appellant had an "efficiency" apartment: one room and a bathroom. R.B. and appellant sat down on the bed; when he tried to fondle and kiss her, she told him to "stop it" and said she did not want to have sex

1. A direct appeal (C9–85–596) from appellant's conviction was dismissed so that he could clarify the record regarding his sentence through a post-conviction proceeding. Appellant filed a

petition for post-conviction relief on December 26, 1985 and raised the same issues presented in this appeal. On April 29, 1986 the post-conviction court denied all relief.

with him. He laid down on the bed fully clothed, but then said: "I can't sleep this way," removed his clothes, and got into the bed. Appellant told R.B. she could not sleep with her clothes on; she asked him "if he could handle it" if she took her clothes off. He said: "sure I can handle it." R.B. removed her clothing except for a camisole, her panties, and her socks, got into bed, and went to sleep.

When she awoke, appellant was on top of her, trying to take off her panties. She said "no" and tried to stop him, but he pushed her down with his forearm and told her to be quiet and not to make any noise. Appellant let R.B. up so she could go to the bathroom. When she came out, appellant pulled her back into bed, told her to be quiet, pushed her down, and put his hands on her neck. He then had sexual intercourse with R.B. When he was done, R.B. went to the bathroom to clean herself and get dressed. Appellant said he was sorry and he would give her a ride home. While he was in the bathroom, R.B. grabbed a picture of him from a table. She took the picture because she "wanted to get him." When appellant stopped at a gas station, R.B. got out of the car, walked away down the street, and then ran to the emergency room at a nearby hospital.

The owner of the gas station, Richard Werner, remembered appellant's car: a rusty yellow Chevrolet Vega with a black stripe on the side and a locking gas cap, that appellant was driving and the passenger was a "fairly thin" woman wearing tight pants, that appellant gave Werner his keys to unlock the gas cap, the woman got out of the car and started walking down the street, and that Appellant shouted: "I'll give you a ride" but the woman kept walking. A customer, Paul Anderson, also remembered appellant and his yellow Vega and watched the woman walk away.

Dr. Robert Deutsch performed a sexual assault examination on R.B. and observed signs of a struggle: several scratches and a red area on R.B.'s lower abdomen; scratches on her left buttocks; and a red and tender area on her right arm. Terry

Laber, a chemist with the BCA, analyzed samples collected from R.B. and compared them with samples obtained from appellant. Laber found intact sperm on R.B.'s panties that was of the same relatively rare type as appellant.

Over defense objection, the trial court allowed the State to elicit testimony from W.E., the victim of a 1981 Hennepin County incident for which appellant pleaded guilty to attempted first degree criminal sexual conduct.

Defense counsel also moved to exclude references to either the *Spreigl* incident or appellant's 1975 felony conviction for false imprisonment if he testified. The trial court denied the motion and appellant decided not to testify. The only defense witness, Peter Weygant, testified that he knows both R.B. and Derrick Weston, but not appellant. Weygant denied being with R.B. and Weston in October 1983 and said "it never happened."

The jury found appellant guilty of third degree criminal sexual conduct. On January 18, 1985, appellant moved for a new trial based on newly discovered evidence: affidavits from Derrick Weston and two other potential witnesses. The motion was denied on January 22, 1985. Appellant was sentenced to imprisonment for a presumptive term of 65 months.

## ISSUES

1. Was there sufficient evidence?

2. Did the trial court abuse its discretion by admitting evidence of another sexual assault or in ruling that prior convictions were admissible to impeach appellant?

3. Was appellant denied a fair trial when the trial court read a list of his aliases to the jury during voir dire and commented on a juror's failure to vote during deliberations?

4. Was appellant entitled to a new trial based on newly discovered evidence?

5. Did the trial court abuse its discretion at sentencing?

## ANALYSIS

1. In reviewing the sufficiency of the evidence to support a jury's verdict, we must determine

whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence.

*State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978) (citations omitted).

Here R.B. was in a situation where a sexual assault could occur. However, she repeatedly told appellant she did not want to have sex with him. Further, the jury could have inferred from her later actions that she did not consent to have sexual intercourse. We must assume the jury believed R.B.'s testimony that appellant forced intercourse upon her against her will. R.B.'s testimony established the elements of third degree criminal sexual conduct. *See* Minn.Stat. § 609.344(c) (1984).

Testimony by the victim of a sexual assault need not be corroborated. *See* Minn. Stat. § 609.347, subd. 1 (1984); *see also State v. Ani*, 257 N.W.2d 699, 700 (Minn. 1977). Yet the State presented substantial corroborative evidence, including: testimony as to R.B.'s emotional condition after the sexual assault and her consistent statements; an expert medical opinion that R.B. had been in a struggle; results of scientific testing; evidence of a prior sexual assault by appellant; and testimony by two impartial witnesses who saw R.B. walk away from appellant the morning after the assault. We conclude there was sufficient evidence to support the jury's verdict.

2. Evidence of another crime may be admitted to establish intent or a common plan. *See* Minn.R.Evid. 404(b). To be admissible, evidence of other crimes should be relevant and material to the State's case, the probative value of the evidence should outweigh the potential for unfair prejudice, and a defendant's participation in the offense should be clear and convincing. *See State v. Filippi*, 335 N.W.2d 739, 743 (Minn.1983). There must be some relationship in time, location, or *modus operandi* between the crime charged and the other crime and the evidence on the issue involved must be weak or inadequate. *See State v. Stagg*, 342 N.W.2d 124, 127 (Minn. 1984).

Appellant's participation in the 1981 Hennepin County crime was clear: he pleaded guilty to attempted first degree criminal sexual conduct. *See Filippi*, 335 N.W.2d at 743. The two crimes were close in time: appellant was placed on supervised release just seven months before his assault on R.B. The *modus operandi* was similar: appellant used false promises to lure women to his apartment with the intention of forcing them to engage in sexual intercourse. *See Stagg*, 342 N.W.2d at 127. Evidence of the prior crime supported R.B.'s claim that appellant intentionally had sexual intercourse with her without her consent. *See id.* Finally, we note that in his closing argument, the prosecutor stressed the limited purpose of the *Spreigl* evidence, thereby minimizing the possibility of undue prejudice. Appellant has not shown the admission of *Spreigl* evidence was a clear abuse of discretion. *See State v. Ture*, 353 N.W.2d 502, 515 (Minn.1984).

3. A prior felony conviction may be admitted to impeach a witness if the trial court finds that its probative value outweighs its prejudicial effect. *See* Minn.R. Evid. 609(a)(1); *see also* Minn.Stat. § 595.-07 (1984). A trial court's admission of impeachment evidence must be sustained unless a clear abuse of discretion is shown. *See State v. Brouillette*, 286 N.W.2d 702, 707 (Minn.1979).

We have already determined that evidence of an attempted sexual assault by appellant was admissible as *Spreigl* evidence. In cross-examining the *Spreigl* witness, defense counsel elicited the fact of appellant's conviction from that incident. The trial court later ruled that appellant's

1975 conviction for false imprisonment was also admissible as impeachment evidence. That conviction was not so old as to be presumptively inadmissible. *See* Minn.R. Evid. 609(b). We have evaluated the relevant factors and find no abuse of discretion in the trial court's ruling that these two felony convictions could be used to impeach appellant if he testified. *See State v. Jones,* 271 N.W.2d 534, 537–38 (Minn.1978).

4. Appellant next contends he was denied a fair trial when the trial court read a list of his aliases to the jury during voir dire and improperly instructed the jury during their deliberations. We find little merit in either contention.

■ The complaint listed five aliases used by appellant. The trial court read those aliases during voir dire to determine whether any of the jurors knew appellant by another name. Appellant has cited no authority to show this procedure was improper; on the contrary, we believe the trial court acted to provide appellant with a fair trial by ensuring that the jurors were qualified. *See* Minn.R.Crim.P. 26.02, subd. 4(1).

■ Late on the evening of their first day of deliberations, the foreman informed the trial court that the jury could not agree on a verdict and the vote was "nine, two and a 'no vote'." The trial court decided to send the jury to a hotel for the night and then stated: "I don't know how anybody can sit on a jury and not vote. That's what you're here for." Defense counsel's motion for a mistrial on the basis of a hung jury was denied. The jury retired for the night and reached a verdict of guilty at 3:00 p.m. the next afternoon.

Under these circumstances, we agree with the post-conviction court that the trial court's comment to the jury, while improper, did not rise to the level of an instruction and did not coerce the jury into reaching a verdict.

■ 5. In order to obtain a new trial on the basis of newly discovered evidence, a defendant must establish:

that the evidence in question was not known to him at the time of trial, that his failure to learn of it was not due to any lack of diligence, that the evidence is material, and that it will probably produce an acquittal at a retrial.

*State v. Rean,* 353 N.W.2d 562, 565 (Minn. 1984); *see* Minn.R.Crim.P. 26.04, subd. 1(1)5. A trial court's decision cannot be disturbed unless there is a clear abuse of discretion. *See Berry v. State,* 364 N.W.2d 795, 796 (Minn.1985).

Here the purported newly discovered evidence consisted of affidavits from Derrick Weston and two others. The trial court found those affidavits were only relevant to the character of R.B. and noted that Weston was a friend of appellant and had been convicted of misdemeanor theft by fraud. We agree with the trial and post-conviction courts that appellant did not meet his burden of showing the new evidence would probably produce an acquittal at a retrial. *See Rean* at 565.

■ 6. Appellant was convicted of a severity level VII offense. *See* Minnesota Sentencing Guidelines V. He was sentenced to imprisonment for 65 months based on a criminal history score of four; the trial court assessed one felony point for a 1969 Louisiana attempted forgery conviction. Appellant was sentenced to one year in jail for that offense, which is a gross misdemeanor sentence. *See* Minn.Stat. § 609.02, subds. 2–4 (1984). Where a gross misdemeanor sentence was imposed for a felony conviction, the felony must be counted as a gross misdemeanor in computing the defendant's criminal history score. *See* Minnesota Sentencing Guidelines II.B.1(c); *see also State v. Vann,* 372 N.W.2d 750, 752 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Sept. 26, 1985). We accordingly modify the term of appellant's sentence to 49 months based on a criminal history score of three. *See* Minnesota Sentencing Guidelines IV.

7. Appellant was in prison when he was charged with this offense; a detainer was logged against him on August 23, 1984. Upon his conviction, the records office at

MCF–Stillwater gave appellant jail credit from September 26, 1984, the date he was transferred to the St. Louis County Jail, to February 4, 1985, the date of his sentencing.

A sentencing court must determine the amount of jail credit to which a defendant is entitled. *See* Minn.R.Crim.P. 27.03, subd. 4(B). Jail credit is due for all time a defendant spent in custody in connection with the offense of sentencing. *Id.* A defendant is entitled to jail credit for time spent in jail in one county in part because of a "hold" or detainer placed upon him by another county. *See State v. Patricelli,* 357 N.W.2d 89, 93–94 (Minn.1984). Appellant is entitled to jail credit from August 23, 1984 when the detainer was filed.

### DECISION

There was sufficient evidence to support the verdict. The trial court did not abuse its discretion by admitting evidence of another crime committed by appellant or ruling that two prior convictions were admissible to impeach him if he testified. Appellant received a fair trial and was not entitled to a new trial on the basis of newly discovered evidence. Appellant's sentence is reduced to a term of 49 months with an additional 33 days of jail credit.

Affirmed as modified.