**STATE of Minnesota, Respondent,**

v.

**Janet KILKER, Appellant.**

No. C1–86–778.

Court of Appeals of Minnesota.

Feb. 10, 1987.

Hubert H. Humphrey, III, State Atty. Gen., William F. Klumpp, Jr., Asst. Atty. Gen., St. Paul, Harris Darling, Nobles Co. Atty., Worthington, for respondent.

C. Paul Jones, State Public Defender, Mollie G. Raskind, Deputy State Public Defender, Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

A jury found appellant, Janet Kilker, guilty of one count of second degree assault and acquitted her of a second count of second degree assault. The trial court stayed imposition of sentence and placed Kilker on probation with the conditions

that she serve 360 days in the County Jail and restrict her place of residence. Kilker argues that the trial court committed reversible error when it admitted *Spreigl* evidence; that she was denied her constitutional right to confrontation; that the trial court's additional instructions to the jury were improper and that the condition of probation restricting her place of residence was improper. We reverse and remand for a new trial.

## FACTS

Appellant is a thirty-five year old woman who lives alone in a house her father bought for her in Worthington, Minnesota. She is mildly retarded and has a severe speech impediment. For years she has been the object of harassment from the adolescents and young adults in the area. Because of this treatment she has become very protective of her property and at times tries to prevent people from walking on the public sidewalk in front of her house.

On the evening of August 22, 1985, several adults in their early twenties were drinking at a local bar. After a few hours, the topic of their discussion turned to Janet Kilker and her defensive behavior. Out of curiosity and boredom two of the women decided to test Kilker's reaction for themselves by walking on the sidewalk in front of her house. Kilker came out and stood at the end of the sidewalk on her property and watched the two women. As they passed by, one of the women took a picture of Kilker, using a flash bulb, and Kilker struck her causing a cut on the woman's arm. The cut did not require medical treatment so the two women returned to the bar. They recounted the incident to other young adults in the bar, but did not report the incident to the police.

Two men and two women who heard the story in the bar decided something had to be done about Kilker and that they would investigate. At approximately midnight the four drove by Kilker's house, but did not see her, so they decided to "give her another chance." They parked the car and walked by Kilker's house. Kilker came out and tried to prevent the four from walking on the public sidewalk in front of her house. As one of the women started back towards the car, Kilker followed her and appeared to have a knife in her hand. At that point one of the men started yelling and swearing at Kilker. A neighbor then intervened and told the four to leave and Kilker to go back into her house. At the same time the police arrived and took statements from the four alleged victims. Kilker had returned to her house and the police made no attempt to interview her.

Kilker was charged with two counts of second degree assault under Minn.Stat. § 609.222 (Supp.1985) for the two separate incidents. Before trial, the State gave notice that it would seek to introduce evidence of eight additional offenses. Defense counsel objected to the admission of this evidence at the omnibus hearing. The omnibus court declined to rule on the objection. No written order was ever issued.

In chambers before the trial commenced defense counsel stated:

> We at one of our pre-trial hearings requested a ruling that all the evidence of other crimes, the so-called Spreigl evidence be excluded. [The omnibus court judge] heard that request and it's my belief that he ruled against me and in favor of letting all this evidence in. However, we do not have a written record of his ruling from that hearing and it was a little confusing because we were talking about several different things almost simultaneously and I guess [the prosecutor] and I have each proceeded on the assumption that all of the Spreigl evidence can come in and if it can't then we have really goofed up the trial and are liable for malpractice both of us so we are operating on the assumption that * * * [the] prior ruling was that all of it can come in.

Based on this erroneous assumption, the State presented eleven witnesses who testified about seven *Spreigl* incidents. Six of the witnesses were teenage males whom Kilker had tried to prevent from walking

on the public sidewalk in front of her house. The other five witnesses were police officers who had either observed one of the incidents or who had investigated an incident. None of these incidents involved a weapon or constituted more than a misdemeanor offense.

For example, a thirteen year old witness testified that he, his sister and a friend were passing by Kilker's house and were walking on the boulevard rather than the sidewalk to avoid Kilker. On direct examination the witness testified that Kilker chased them and that his sister ran into the street where she was almost hit by a car. On cross-examination the witness conceded that Kilker had actually only walked after them for a couple of steps.

The witnesses for the defense consisted of Kilker's father and sister and some of Kilker's neighbors. These witnesses confirmed that Kilker was continually harassed by young adults, some even driving over from nearby towns. One neighbor testified that she had three small children and had never had a problem with Kilker. Another neighbor testified that Kilker just watched the young children pass by and did not bother them.

The jury found Kilker guilty of second degree assault on the four adults but acquitted her of second degree assault for the incident involving the two women. The trial court stayed imposition of the sentence and placed Kilker on probation for five years with the conditions that she serve 360 days in the Nobles County Jail with credit for 188 days already served and that she participate in out-patient treatment. She was also ordered not to live within five blocks of any public school. After the notice of appeal was filed, counsel for Kilker moved the trial court for modification of probationary terms noting that Kilker was scheduled for release from jail and her house was within five blocks of a school. The trial court ordered that the Nobles County Corrections Department could require Kilker not to live adjacent to any street used by a large number of pedestrians under sixteen years of age.

## ISSUE

Did the admission of *Spreigl* evidence constitute reversible error?

## ANALYSIS

■ Subject to certain exceptions, evidence of a defendant's other crimes or bad acts is inadmissible. The Minnesota Supreme Court has often emphasized its:

antipathy * * * to evidence of crimes other than that for which the defendant is on trial, and the restrictions and procedural safeguards we have established to safeguard the defendant from unfair prejudice.

*State v. Link*, 289 N.W.2d 102, 105 (Minn. 1979). To protect against the dangers of this type of evidence, a trial court must determine before trial that there is clear and convincing evidence that the defendant participated in the other crimes or bad acts; that the evidence is relevant and material to the State's case and that the probative value of the evidence outweighs its potential for unfair prejudice. *State v. Doughman*, 384 N.W.2d 450, 454 (Minn.1986).

■ In the present case, either because of defense counsel's error or because of confusion caused by the omnibus hearing and the trial being heard by different judges, Kilker was denied the safeguards against misuses of *Spreigl* evidence. Eleven witnesses testified to seven *Spreigl* incidents. A review of the record shows that the probative value of the incidents was far outweighed by the potential for unfair prejudice. *Spreigl* evidence is inadmissible if

the sole purpose of its introduction is to show that the accused has a propensity to commit crimes, or if its potential for unfair prejudice outweighs its probative character.

*State v. Stagg*, 342 N.W.2d 124, 127 (Minn. 1984). Under this standard the *Spreigl* evidence in the present case was inadmissible.

To establish its case the State had the testimony of three of the alleged victims, witnesses and a police officer. The *Spreigl*

evidence was material to the general problems between Kilker and the adolescents in the community, but the evidence was not so material to the assault with which she was charged as to outweigh its prejudicial effect. This *Spreigl* evidence constituted a substantial portion of the State's case against Kilker. The trial court itself recognized the power of this evidence by commenting in chambers before closing arguments that:

> There hasn't been any request for mistrial by either party. We talked previously after the session yesterday where the defense counsel indicated or asked the prosecution if he wanted a mistrial and he indicated no.
>
> \*   \*   \*   \*   \*   \*

The only other area that concerned the Court was the Spreigl evidence.

■ The State argues, and defense counsel appeared to agree at trial, that the prejudicial effect was counteracted by Kilker's opportunity to present evidence of the continual harassment to which she was exposed. We cannot agree. Both the State's and the defense's evidence of Kilker's various problems within the Worthington community could not help but prejudice the jury by focusing their attention not on the charge before them, but on the more general problem within the community. This is exactly the danger the supreme court has recognized and sought to avoid.

> In *Spreigl*, we recognized that the introduction of evidence of prior crimes or bad acts may result in the jury's convicting the accused, not because the accused is guilty of the current charge, but because he or she may have escaped punishment for previous offenses or may have performed previous acts that are similar to the current charge.

*Doughman,* 384 N.W.2d at 455.

Further evidence of this prejudicial effect can be found in the trial court memorandum to its order modifying the conditions of probation.

> This Court is reluctant to provide that as a condition of probation limitations be placed on locations where the Defendant

can live. It is clear, however, that the personality of the Defendant is such that a danger to the public exists when she is in regular contact with small children who, on occasion, may tease her and incite her to anger. Knowing of no way in which this Court can control the actions of small children, this Court feels the only solution is to attempt to keep the Defendant away from them or at least out of an area where she would be in regular contact with them.

Kilker was not charged with, or convicted of, assault on small children. There was no evidence presented at trial to support such a charge. Clearly, Janet Kilker was tried and sentenced in an attempt to solve a community problem and not solely on the basis of the charges for second degree assault.

While justice does not demand an error-free trial, it does demand a trial free of prejudicial error that substantially influences the jury. *State v. Marty,* 376 N.W.2d 515, 516 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986) (citing *State v. Billington,* 241 Minn. 418, 427, 63 N.W.2d 387, 392–93 (1954)). A review of the record in the present case can only lead to the conclusion that the erroneous admission of the *Spreigl* evidence had an overwhelming prejudicial effect on both the jury and the trial court.

The State argues that under *State v. Burns,* 394 N.W.2d 495 (Minn.1986), Kilker's failure to specifically request a hearing on the admissibility of the *Spreigl* evidence precludes her from raising a claim of error on appeal. We disagree. The record makes clear that defense counsel objected to admission of this evidence at the omnibus hearing. Counsel understood the issue had been finally resolved against Kilker so he failed to pursue the issue further. Generally the failure to request these procedural safeguards works as a waiver. Under the unique facts in the present case, however, there was no waiver, only an inexplicable misunderstanding on the part of defense counsel perpetuated by the State's and the trial court's acquiescence. The

**454**

record supports a strong likelihood that this error resulted in an unjust verdict which compels a new trial.

The State suggests that the lesser remedy of remanding for a postconviction hearing on the admissibility of the *Spreigl* evidence rather than granting a new trial would be the appropriate remedy. *See State v. Burns*, 394 N.W.2d at 497–98. Since we have concluded that the admission of the *Spreigl* evidence in this case, as a matter of law, substantially prejudiced the proceedings and denied Kilker a fair trial, such a disposition would be ineffective and inappropriate.

In light of our resolution of this issue, we do not address the other issues raised by Kilker.

### DECISION

Appellant was denied the right to a fair trial by the admission of *Spreigl* evidence. Therefore, a new trial is warranted.

Reversed and remanded for a new trial.