STATE of Minnesota, Respondent,

v.

Bert Ernest DABY, Appellant.

No. C3–86–412.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Review Denied Dec. 12, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Laura S. Underkuffler, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and LESLIE and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Bert Daby appeals from his conviction for first degree criminal sexual conduct, contending that: (1) the trial court abused its discretion by admitting evidence of his prior sexual assaults; (2) identification evidence was the product of impermissibly suggestive procedures; (3) the evidence was insufficient to support the jury's verdict; and (4) a double durational departure was not justified. We affirm.

## FACTS

On the afternoon of August 18, 1985, three children rode their bikes to Shingle Creek Pond in Brooklyn Park: H.S., age nine; her brother E.S., age eight; and his friend, Joshua Dickens, also age eight. After the children played for a while they discovered their bikes were gone. Appel-

lant then approached the children and told them that some kids had taken the bikes to a "fort" in the woods and offered to help look for them. They all walked along a path and looked for the bikes. When they came to a bridge, appellant asked E.S. where he had last seen the bikes; E.S. ran back down the path, and appellant told Joshua to go with him. Appellant said he and H.S. would meet them at the beach.

Appellant took H.S. into the woods to look for the bikes. He pulled out a folding knife with a yellowish-brown handle, put it in her face, and told her not to scream or he would kill her. H.S. said appellant tied a purple bandana with a white design over his face, took off her pants and underwear, told her to lay down on his jean jacket, and had sexual intercourse with her. Appellant also "kissed" her on the mouth and vagina. After appellant left, H.S. got dressed and waited until she was sure he was gone before she ran out of the woods and found E.S. and Joshua. They went home and H.S. told her mother what happened. The police were summoned at 4:13 p.m.

The next day a police officer worked with H.S. and developed a "composite" image of her assailant, which was then published in a neighborhood newspaper. Appellant's former girlfriend told police the picture looked like him and that he was living in the Brooklyn Park area. Jason and John Rodewald, ages 10 and 12, thought the picture looked like a man they had gone fishing with at Shingle Creek Pond.

Appellant was arrested on September 4, 1985. When asked about his whereabouts on the afternoon of August 18th, appellant claimed he was at the 180 Degrees Halfway house visiting Frank Hinds. He said he often fished at Shingle Creek Pond, but wasn't there on August 18th. Police searched his car and found a jean jacket and blue and white bandana on the front seat; a large folding knife with a yellow handle was in the glovebox.

On September 5. 1985, H.S., E.S., Joshua Dickens, and John and Jason Rodewald viewed a six-man lineup. H.S. and the two Rodewald boys picked appellant, but E.S. and Joshua Dickens did not. Joshua stated that appellant had "a funny voice" and later told police that if the men in the lineup had not talked, he would have picked appellant because "he looked exactly like the guy that helped us look for our bikes." At trial, H.S. and Joshua identified appellant, as did the Rodewald boys, who said they had seen him at the pond on August 18th.

Dr. Patrick Lilja examined H.S. soon after the sexual assault. She appeared "withdrawn" and "stunned" and complained that "her bottom hurt." Dr. Lilja found:

> the area was what we call edematous. That means swollen. There were abrasions present. There was some fresh bleeding and a little tissue called the hymen on younger females is somewhat tight. That's been broken with a little bleeding around it. It was also very tender in that area.

Dr. Lilja concluded H.S.'s injuries were consistent with sexual penetration. Patricia Wojtowicz, a crime laboratory analyst with the BCA, compared samples collected from H.S. with samples from appellant. A "PGM" enzyme test showed that the donor of semen found on H.S.'s underwear was a "PGM type 1 + " individual and that appellant has that type of enzyme. She concluded that appellant could have been the source of the semen.

Appellant called his daughter, Colleen Foley, at 2:00 a.m. on September 5, 1985, and said he had been arrested for assault. Foley testified that he told her to get a knife out of the glovebox of his car and "get rid of it."

Three witnesses were allowed to testify that appellant had sexually assaulted them when they were young girls. The trial court found at a pretrial omnibus hearing and again during trial that evidence of appellant's prior crimes was admissible to show identity and *modus operandi*. The trial court gave a cautionary instruction to the jury in connection with that testimony.

Appellant testified that he was convicted of rape in 1969 and of two counts of indecent liberties in 1974. He admitted calling Foley and telling her that there was a knife in his car, but stated that he had "no idea" why she said he told her to get rid of it. He was at Shingle Creek Pond on the afternoon of August 18th but stayed for only about 10 minutes. He claimed he signed in at 180 Degrees at 3:40 p.m. and looked for Frank Hinds in the dining room. He didn't see anyone, so he went out on the porch for ten minutes. When he walked back in, he saw Hinds and Joe Brown. Hinds, Joe Brown, and David Mardaus testified that they were in the dining room at 180 Degrees on September 18th but did not see appellant until around 4:00 p.m.

The jury found appellant guilty of first degree criminal sexual conduct; he was sentenced to imprisonment for 202 months.

## ISSUES

1. Did the trial court abuse its discretion by admitting evidence of appellant's prior crimes?

2. Was identification evidence tainted by any suggestive procedures?

3. Was there sufficient evidence?

4. Did the trial court abuse its discretion in imposing a double durational departure?

## ANALYSIS

### I.

Evidence of other crimes may be admitted to establish identity. *See* Minn.R.Evid. 404(b). To be admissible, such evidence must be relevant and material, the probative value of the evidence must outweigh the potential for unfair prejudice, and there must be clear and convincing evidence that the defendant committed the offense. *State v. Doughman,* 384 N.W.2d 450 (Minn.1986); *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983).

Regardless of the purpose for which the evidence is admitted, there must be some relationship in time, location, or *modus*

*operandi* between the crime charged and the other acts, wrongs, or crimes, and further, the direct or circumstantial evidence on the issue in question must be weak or inadequate. The purpose of the requirement of close relationship in time, place or *modus operandi* is to help ensure that the other-crime evidence being admitted is relevant.

*State v. Stagg,* 342 N.W.2d 124, 127 (Minn. 1984) (citation omitted).

Appellant contends that evidence of his previous crimes should not have been admitted. The admission of evidence rests in the sound discretion of the trial court and will be upheld unless there is a clear showing of an abuse of that discretion. *See State v. Ture,* 353 N.W.2d 502, 515 (Minn. 1984). Appellant bears the burden of showing both error in the admission of the evidence and the prejudice resulting from that error. *See State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981).

■ Here identity was at issue because appellant relied on an alibi defense. Evidence that he committed similar crimes in the past was relevant to the jury's determination of whether he was the person who sexually assaulted H.S. *See* Minn.R.Evid. 401. The *modus operandi* used in the prior crimes was remarkably similar to the facts of this case: in each instance, appellant assaulted young girls in wooded areas with the aid of a knife and covered his face with a bandana. *See Stagg,* 342 N.W.2d at 127. We conclude appellant has not demonstrated the trial court abused its discretion when it found that the probative value of the evidence of his other crimes outweighed its prejudicial effect. *See* Minn.R. Evid. 403.

### II.

■ The admission of identification evidence that is derived from suggestive identification procedures is a violation of a defendant's right to due process. *See Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972). However, upon reviewing the record, we agree with the trial court that law enforcement personnel

did not use any "suggestive" procedures in this case.

### III.

■ In reviewing the sufficiency of the evidence to support a jury's verdict, an appellate court is limited to determining

whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence.

*State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978) (citations omitted); *see State v. Ulvinen,* 313 N.W.2d 425 (Minn.1981).

The jury found appellant guilty of first degree criminal sexual conduct. *See* Minn. Stat. § 609.342, subd. 1(a) (1984). We must assume the jury believed H.S. when she identified appellant as her assailant and described the acts of sexual penetration he forced upon her. *See Merrill* at 111. Together with evidence of their ages, her testimony established all the elements of the charged offense. *See* § 609.342, subd. 1(a). Nothing more is required to sustain the jury's verdict. *See* Minn.Stat. § 609.-347, subd. 1 (1984); *see also State v. Ani,* 257 N.W.2d 699, 700 (Minn.1977).

### IV.

■ Lastly, appellant contends the trial court abused its discretion by sentencing him to imprisonment for 202 months, double the presumptive term under the guidelines. In departing, the trial court cited the following aggravating circumstances:

one was wielding of a knife throughout the assault by the Defendant. The second was that the Defendant did engage in multiple forms of sexual penetration, that is, with the penis, with the hand, and orally. And third, that the victim did suffer personal injuries to her genitalia. And fourth, that the victim was in fear of her life, this nine-year-old victim was

in fear of her life. I guess the record is pretty clear that the victim was, the record speaks for itself, nine-years-old at the time.

H.S. testified that appellant pulled out a knife, put it in her face, and told her he would kill her if she screamed. The doctor who examined H.S. after the sexual assault described the injuries inflicted by appellant. We agree that these facts show appellant treated H.S. with "particular cruelty." *See* Minnesota Sentencing Guidelines II.D. 2.b.(2). Moreover, H.S. testified that appellant sexually penetrated her in two separate ways. *See* Minn.Stat. § 609.341, subd. 12 (1984); *see also Ture v. State,* 353 N.W.2d 518, 522 (Minn.1984). The trial court did not abuse its discretion in finding substantial and compelling circumstances which justified a double durational departure. *See* Minnesota Sentencing Guidelines II.D.

### DECISION

The trial court did not abuse its discretion in admitting testimony from the victims of appellant's other crimes or identification evidence. There was sufficient evidence. A double durational departure was justified by substantial and compelling circumstances.

Affirmed.