**STATE of Minnesota, Respondent,**

v.

**Eric Dion DAVIS, Appellant.**

No. C2–95–1333.

Court of Appeals of Minnesota.

April 2, 1996.

Review Denied May 21, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, Susan Gaertner, Ramsey County Attorney Mark Nathan Lystig, Assistant County Attorney, St. Paul, for respondent.

John M. Stuart, State Public Defender, Ann McCaughan, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by NORTON and KALITOWSKI and SHORT, JJ.

## OPINION

SHORT, Judge.

A jury convicted Eric Dion Davis of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(d) (dangerous weapon), second-degree assault in violation of Minn.Stat. § 609.222, subd. 1 (dangerous weapon), and possession of a short-barreled shotgun in violation of Minn.Stat. § 609.67, subd. 2. On appeal, Davis argues the trial court: (1) violated his constitutional right to present a defense by refusing to admit evidence of the victim's sexual history, which showed a pattern of behavior clearly similar to his theory of consent; (2) improperly based an upward durational sentencing departure on findings of fact that have no support in the record; and (3) erroneously entered judgments of conviction on both the charge of first-degree criminal sexual conduct and the lesser included offense of second-degree assault. We affirm as modified.

## FACTS

On November 19, 1994, Eric Davis and Robert Turner visited the Badger Bar in St. Paul. At the bar, Davis and Turner spoke with C.O. Around 1:00 a.m., the trio left the bar and walked a few blocks to the duplex where C.O. lives with her stepfather.

Shortly thereafter, C.O.'s stepfather awoke to "whooping," "hollering," and "scuffling" on his front porch. Approaching a window, he heard a man say, "This bitch don't have anything in her purse so hurry up and get up so I can do my thing." After hearing a woman say, "Don't do this to me," C.O.'s stepfather dialed 911 and reported a rape in progress on his porch. When the police arrived, they saw Davis, who was zipping his trousers, and ordered him to stop. Ignoring their instructions, Davis attempted to flee through a porch window, but was subdued following a struggle. At the scene, the police found C.O. in a fetal position, naked from the waist down.

In their statements to the police and at trial, Davis and C.O. gave conflicting accounts of the incident. According to Davis, C.O. agreed to have sexual relations with both men in exchange for crack cocaine. She first had sexual intercourse with Turner and was preparing to do the same with Davis when Turner suddenly drew a shotgun and began rifling through C.O.'s purse, which caused an altercation among the parties. By contrast, C.O. recounted how Davis and Turner offered to walk her home and how Davis unexpectedly drew a shotgun, hit her in the head with it, threatened to kill her, raped her vaginally and orally, and was attempting to penetrate her anally when the police arrived. C.O. also told the police that she would, in principle, trade sex for money if necessary, but would never exchange sex for crack.

The physical evidence yields no conclusive answers regarding Davis's guilt or innocence. A short-barreled shotgun, found lying on C.O.'s chest, bore only Turner's fingerprints, but the police also found an unidentified pair of gloves at the scene. The police discovered several condoms, which C.O. readily claimed as her own, but their packaging remained unopened. C.O. complained of physical maltreatment, but an examination at the hospital yielded only evidence of vaginal tenderness. Finally, while vaginal and rectal swabs demonstrated the presence of Turner's semen, and not that of Davis, Turner's semen and C.O.'s menstrual blood were present on Davis's underwear.

Three days before the scheduled commencement of trial, the state moved to bar admission of any evidence regarding C.O.'s sexual history. The defense objected, citing C.O.'s statement concerning her hypothetical

willingness to trade sex for money as vital evidence supporting its theory of the case. Over the prosecutor's objections, the trial court refused to bar the evidence on the grounds of untimely notice. *See* Minn.Stat. § 609.347, subd. 4(a) (requiring the defense to make an offer of proof at least three business days prior to trial); Minn. R. Evid. 412(2)(A) (requiring an offer of proof prior to trial). However, the trial court instructed the defense to prepare a specific offer of proof within two days.

When the parties reconvened, the defense reiterated its desire to introduce C.O.'s statement and named four witnesses who might have information regarding C.O.'s alleged history of trading sex for crack. The trial court refused to authorize the introduction of testimony by two of the witnesses because the defense could not identify the content of the offered testimony. As to the other two witnesses, Turner's *cellmates*, the defense asserted both witnesses would testify that C.O. exchanged sex for crack outside the Badger Bar on several occasions within weeks of the offense. Although the trial court agreed the evidence established a pattern of strikingly similar behavior, it expressed serious doubts regarding the veracity of the eleventh-hour statements of Turner's cellmates, applied the rape shield statute, and refused to admit the testimony of either cellmate.

After a jury convicted Davis on all counts, the trial court sentenced him, first on the short-barreled shotgun offense, and used the resulting criminal history point in calculating Davis's presumptive (98–month) sentence for first-degree criminal sexual conduct. The trial court then ordered an upward durational departure to 142 months based on: (1) a violation of C.O.'s zone of privacy, inasmuch as the offense occurred on her porch; (2) the particular cruelty of striking C.O. in the head with the shotgun and threatening to kill her; and (3) multiple forms of penetration.

## ISSUES

I. Did the trial court violate Davis's constitutional right to present a defense by excluding evidence of the victim's sexual history, which allegedly included recent exchanges of sex for crack cocaine?

II. Does the record support the trial court's upward durational sentencing departure?

## ANALYSIS

■ We examine a trial court's evidentiary rulings and sentencing decisions for abuses of discretion and errors of law. *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn.1990) (reviewing evidentiary rulings for an abuse of discretion or error of law); *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981) (reviewing de novo a trial court's application of the sentencing guidelines and affirming a sentencing departure, based in part on proper considerations, because the trial court did not clearly abuse its discretion). This case requires us to decide: (1) whether the trial court violated Davis's constitutional right to present a defense by excluding evidence of the victim's pattern of sexual behavior that was clearly similar to Davis's theory of consent; and (2) whether the record supports the trial court's findings regarding the factual predicate for its upward durational sentencing departure.

### I.

Davis apparently concedes the inadmissibility of C.O.'s sexual history under either the rape shield statute (Minn.Stat. § 609.347, subd. 3 (1994)) or its counterpart in the Minnesota Rules of Evidence (Minn. R. Evid. 412) and relies solely on his constitutional right to present evidence material and favorable to his theory that C.O. consented to exchange sex for crack cocaine. *See State v. Crims*, 540 N.W.2d 860, 865–66 (Minn.App. 1995) (noting a constitutional defendant's right to present evidence that is material and favorable to the theory of defense), *review denied* (Minn. Jan. 25, 1996); *see also Sandoval v. Acevedo*, 996 F.2d 145, 149–50 (7th Cir.) (recognizing the constitutional right of a rape defendant to introduce vital evidence favorable to his defense), *cert. denied*, —— U.S. ——, 114 S.Ct. 307, 126 L.Ed.2d 255 (1993); *Wood v. Alaska*, 957 F.2d 1544, 1554 (9th Cir.1992) (same); *United States v. Saunders*, 736 F.Supp. 698, 703 (E.D.Va.

1990) (same), *aff'd*, 943 F.2d 388 (4th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (same); *Government of the Virgin Islands v. Jacobs*, 634 F.Supp. 933, 938 (D.Vi.1986) (same); *State v. Vaughn*, 448 So.2d 1260, 1262 (La.1983) (same); *State v. Patnaude*, 140 Vt. 361, 438 A.2d 402, 404–05 (1981) (same); *State v. Hudlow*, 99 Wash.2d 1, 659 P.2d 514, 523 (1983) (same); 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 159, at 200 (2d ed. 1994) (same).

■ Rape shield provisions usually do not affect the right to present a defense because they rest on the premise that a person's character is generally irrelevant to a specific case. *Crims*, 540 N.W.2d at 867. However, when a victim's sexual history involves a *pattern* of *clearly* similar behavior constituting habit or modus operandi and is favorable to the defendant's theory of consent, the evidence becomes relevant, material, and *potentially* admissible as a matter of constitutional law. *See id.* at 866, 868 (setting forth the constitutional standard for admission and stating that sexual history evidence becomes legally relevant only if it shows habit or modus operandi); *see also Jacobs*, 634 F.Supp. at 938–39 (recognizing the constitutional right to present highly probative evidence and noting that a rape victim's pattern of clearly similar behavior presents a situation involving enhanced probative value); *Vaughn*, 448 So.2d at 1262, 1265 & n. 2 (the majority and a dissenting justice agreeing that genuine pattern evidence is admissible as a matter of constitutional law); *Hudlow*, 659 P.2d at 520, 523 (recognizing that a pattern of highly similar sexual behavior may be probative of consent and, thus, constitutionally admissible); 2 Mueller & Kirkpatrick, *supra*, § 159, at 204 (stating a defendant may have a constitutional right to introduce evidence showing a pattern of distinctive consensual sexual behavior that is highly similar to the facts of the incident being charged); Harriett R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L.Rev. 763, 834 (1986) (arguing distinctive pattern evidence is so probative that fairness requires its admission).

■ To qualify as a pattern of clearly similar sexual behavior, the sexual conduct must occur regularly and be similar in all material respects. *See State v. Cassidy*, 3 Conn.App. 374, 489 A.2d 386, 392 (holding that a single instance of similar conduct does not constitute a pattern), *certification denied*, 196 Conn. 803, 492 A.2d 1239 (1985); *Hodges v. State*, 386 So.2d 888, 889 (Fla.Dist.Ct.App. 1980) (same); *Vaughn*, 448 So.2d at 1267–68 (same); *State v. Shoffner*, 62 N.C.App. 245, 302 S.E.2d 830, 833 (1983) (quoting *State v. Fortney*, 301 N.C. 31, 269 S.E.2d 110, 116–17 (1980) and defining a pattern to include actions the victim "commonly" or "often" repeated); *see also Jeffries v. Nix*, 912 F.2d 982, 985, 987 (8th Cir.1990) (finding a victim's history of exchanging sex for money irrelevant to the defendant's theory that the victim intended to use sex to reimburse him for drugs and alcohol), *cert. denied*, 499 U.S. 927, 111 S.Ct. 1327, 113 L.Ed.2d 259 (1991); *Crims*, 540 N.W.2d at 868 (finding a victim's history of exchanging sex for drugs was not clearly similar to a theory of consent to trade sex for drug *money* ); *Patnaude*, 438 A.2d at 410 (finding no similarity between (1) *"menage a trois"* or "couples swapping" and (2) an encounter among two women and five men); *Hudlow*, 659 P.2d at 523 (finding no clear similarity between the victims' past sexual conduct and the offense charged; while the former always involved sailors and never included hitchhiking, the rape victims met the defendants, two nonsailors, while hitchhiking); 2 Meuller & Kirkpatrick, *supra*, § 159, at 204–05 (noting courts rarely find the behavior sufficiently distinctive to pass the threshold of clear similarity or sufficiently regular to establish a pattern).

■ The bulk of Davis's offer of proof falls short of demonstrating a pattern of clearly similar behavior. Unable even to state the general content of two witnesses' testimony, Davis gave the trial court no reason to believe their testimony would unveil incidents of conduct clearly similar to his theory of consent. Under these circumstances, the trial court properly declined to authorize their testimony. *See Crims*, 540 N.W.2d at 868 (placing the burden on defendants to establish the relevance of state-

ments regarding a victim's sexual history). Likewise, C.O.'s statement that she would, in principle and if necessary, agree to trade sex for *money* bears no clear similarity to Davis's theory of consent to exchange sex for crack cocaine. *Jeffries,* 912 F.2d at 985, 987 (finding a victim's history of exchanging sex for money irrelevant to the defendant's theory that the victim intended to use sex to reimburse him for drugs and alcohol); *Crims,* 540 N.W.2d at 868 (finding a victim's history of exchanging sex for drugs was not clearly similar to a theory of consent to trade sex for drug *money* ).

■ However, the statements of Turner's cellmates would establish that C.O.: (1) used the Badger Bar as a base from which to solicit exchanges of sex for crack; (2) engaged in this behavior as recently as one day before, and six weeks after, the alleged rape; (3) typically requested a $20 rock as consideration; and (4) had agreed to transactions involving multiple partners. Davis argues this testimony constitutes a pattern of clearly similar behavior, which is admissible as a matter of constitutional law, but which the rape shield statute improperly excludes for lack of evidence regarding prior false allegations of sexual assault. *See* Minn.Stat. § 609.347, subd. 3(a)(i) (requiring pattern behavior to be so similar as to include prior false allegations of sexual assault). *But see* Galvin, *supra,* at 834, 845 (arguing fairness requires the admission of distinctive pattern evidence and criticizing a false-allegation requirement as an insurmountable obstacle to admission of repeated, distinctive behavior that is highly relevant to a consent defense). However, even when a defendant demonstrates the existence of highly probative evidence, the state may impose procedural safeguards to bar the introduction of prejudicial evidence that is fantastic, incredible, or unbelievable. *See State v. Goldenstein,* 505 N.W.2d 332, 340 (Minn.App.1993) (requiring, on constitutional grounds, the admission of evidence concerning prior false accusations of sexual abuse, but conditioning admission on the trial court's finding of a reasonable prob-

ability that the asserted evidence is true), *review denied* (Minn. Oct. 19, 1993).

■ The Constitution will tolerate a rule or statute requiring the trial court to make a threshold finding of veracity as a predicate to the admission of a criminal defendant's highly probative, but exceedingly prejudicial, evidence. *See id.* (requiring, on constitutional grounds, the admission of evidence concerning prior false accusations of sexual abuse, but conditioning admission on the trial court's finding of a reasonable probability that the asserted evidence is true); Black's Law Dictionary 1182 (6th ed. 1990) (defining a preponderance of the evidence as "[t]hat which best accords with reason and probability"); *see also* Minn.Stat. § 609.347, subd. 3 (requiring the trial court to make a threshold finding of veracity as a predicate to the admission of pattern evidence under the rape shield statute). The trial court found the eleventh-hour statements of Turner's cellmates, appearing for the first time after the trial court's request for a specific offer of proof within two days, inherently unbelievable. Under these circumstances, the rape shield law's exclusion of Davis's evidence does not offend the Constitution.

## II.

■ Unless substantial and compelling circumstances are present, trial courts must impose the presumptive sentence authorized by the sentencing guidelines. *Garcia,* 302 N.W.2d at 646 (quoting Minn. Sent. Guidelines I.4). Trial courts may order upward sentencing departures if the defendant's conduct was significantly more serious than that typically involved in the commission of the particular offense. *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984). We may reverse sentencing departures that constitute an abuse of discretion, result from an erroneous application of the law, or depend on unsupported findings. *See Garcia,* 302 N.W.2d at 647 (generally reviewing sentencing departures for a clear abuse of discretion); *Johnson v. State,* 421 N.W.2d 327, 332 (Minn.App.1988) (reviewing the trial court's application of the sentencing guidelines for error), *review denied* (Minn. May 4, 1988); *State v. Gaines,* 408 N.W.2d 914, 918 (Minn. App.1987) (requiring departure grounds to be supported by the record), *review denied* (Minn. Sept. 18, 1987).

The trial court ordered roughly a 50–percent upward departure from the presumptive 98–month sentence, citing the violation of C.O.'s zone of privacy, the particular cruelty of striking C.O. with the shotgun and threatening to kill her, and the multiple forms of penetration as aggravating factors. Davis acknowledges these factors, if present, form a legitimate basis for departure. *See, e.g., State v. Coley,* 468 N.W.2d 552, 555–56 (Minn.App.1991) (recognizing death threats and violation of the victim's zone of privacy as aggravating factors); *Gaines,* 408 N.W.2d at 917–18 (recognizing gratuitous infliction of pain and multiple forms of penetration as aggravating factors); *State v. Daby,* 394 N.W.2d 849, 853 (Minn.App.1986) (citing death threats and multiple forms of penetration as aggravating factors), *review denied* (Minn. Dec. 12, 1986). However, Davis argues the record does not support the findings that he struck C.O., threatened to kill her, or engaged in multiple forms of penetration. *See Gaines,* 408 N.W.2d at 918 (requiring departure grounds to be supported by the record). Even if true, the limited departure is justified because the sexual assault occurred on C.O.'s enclosed porch and, thus, violated her zone of privacy. *See State v. Winchell,* 363 N.W.2d 747, 750 (Minn.1985) (defining the zone of privacy to include the victim's house and curtilage); *Garcia,* 302 N.W.2d at 647 (upholding a sentencing departure because the trial court, while relying on a few improper factors, also based its decision on appropriate sentencing considerations and, therefore, did not clearly abuse its discretion).

In addition, the record supports the trial court's findings concerning the remaining aggravating factors: (1) while C.O. never testified that Davis struck her with the shotgun, two officers testified C.O. told them that Davis struck her in the head with the shotgun; (2) C.O. testified that Davis stated, "I'll kill this bitch"; (3) two officers recounted C.O.'s statement that Davis told Turner to go ahead and have sex with C.O. because Davis planned to kill her anyway; (4) C.O. testified that Davis penetrated her orally, vaginally, and was attempting anal penetration when the police arrived; (5) one officer recounted C.O.'s statement that Davis penetrated her vaginally and had achieved slight anal penetration when the police arrived; (6) another officer testified that C.O. told him Davis penetrated her orally, vaginally, and had begun performing anal intercourse when the police arrived; (7) while the vaginal and rectal swabs disclosed only Turner's semen, an expert testified that Davis's semen would not be present if he did not ejaculate; and (8) Davis's underwear contained samples of Turner's semen and C.O.'s menstrual blood. This evidence, while disputed and not wholly consistent, reasonably supports the trial court's findings. *See Gaines,* 408 N.W.2d at 918 (requiring departure grounds to be supported by the record).

At sentencing, the trial court characterized the second-degree assault charge as an offense included within first-degree criminal sexual conduct with a dangerous weapon. On appeal, the state agrees. Under these circumstances, we vacate Davis's conviction on the unsentenced second-degree assault charge. Minn.Stat. § 609.04, subd. 1 (1994) (authorizing convictions either for charged offenses or for included offenses, but not both); *State v. Patch,* 329 N.W.2d 833, 837 (Minn.1983) (vacating a conviction based on the state's agreement that the conviction violated the statutory prohibition against additional convictions for included offenses).

## DECISION

First, Davis was not constitutionally entitled to admission of the evidence contained in his offer of proof. Part of the evidence manifestly fell short of the demanding standard for admission of evidence showing the victim's clearly similar pattern of sexual behavior. The trial court disbelieved the veracity of the remaining evidence, thus destroying whatever potential it might have carried for admission as a matter of constitutional law. Second, the record supports the findings on which the trial court based its sentencing departure. And third, we vacate Davis's conviction on the unsentenced second-degree assault charge because the state agrees with the trial court's determination that it constituted an included offense. Under these circumstances, we affirm the trial

court in all respects, except for the entry of conviction on Davis's unsentenced second-degree assault offense.

**Affirmed as modified.**