*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0422**

State of Minnesota,
Respondent,

vs.

Jared Armand Cobb,
Appellant.

**Filed March 2, 2015
Affirmed in part, reversed in part, and remanded
Hooten, Judge**

Ramsey County District Court
File No. 62-CR-13-5751

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Rodenberg, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges his conviction of third-degree criminal sexual conduct, contending that the district court erred by: (1) excluding evidence of the victim's

previous sexual conduct; (2) imposing an upward durational sentencing departure; and (3) imposing a lifetime conditional-release term. We affirm the district court's exclusion of evidence and the upward sentencing departure, reverse the lifetime conditional-release term, and remand.

## FACTS

On April 20, 2013, K.G., her neighbor S.C., and S.C.'s boyfriend spent much of the day drinking wine in K.G.'s apartment in St. Paul. At some point during the evening, S.C. brought her boyfriend back to her apartment to rest because he was intoxicated. Before she left, S.C. indicated that she would return to K.G.'s apartment later. At about 10:30 p.m., appellant Jared Armand Cobb knocked on K.G.'s apartment door, looking for S.C. Cobb was carrying a case of beer. K.G. knew of Cobb, thought that he was married to S.C.'s daughter, and had seen him around the apartment building. Cobb said that S.C. was not answering her door, and K.G. invited Cobb into her apartment.

K.G. telephoned S.C. several times, but S.C. did not answer her phone because she had fallen asleep. K.G. left her a voicemail message, stating that she should "get back down here" because Cobb was there and "he brought [her] a 12 pack" of beer. After K.G. left the voicemail message, Cobb moved next to her on the couch and put his hand between her thighs. K.G. jumped up and said, "No. No. No. I don't get down like that." She walked into the kitchen and then returned to the couch, sitting away from Cobb. Cobb got up, walked over to K.G., and forced her to give him oral sex. K.G. testified that it all happened very quickly and that she was too scared to fight back. She tried to move away, but felt that she could not overpower Cobb, who outweighed her by nearly 100

2

pounds. Cobb ejaculated on K.G.'s face and then left the apartment. K.G. got up, locked her apartment door, and used a washcloth to clean her face.

K.G. did not report the incident to the police right away because she felt scared, embarrassed, and humiliated. But, in early May, after she started having nightmares, her family encouraged her to report the incident. On May 13, 2013, she reported the incident to St. Paul police officer John Raether. Officer Raether described K.G. as emotional and ashamed as she related the incident, and she seemed like "she needed to get the story out." K.G. gave Officer Raether the washcloth that she had used to clean her face on April 20, which had not been laundered. K.G. also spoke with St. Paul police sergeant Paul Cottingham, an investigator in the Sex Crimes Unit.

On May 14, 2013, Sergeant Cottingham spoke with Cobb. Cobb admitted knowing who K.G. was, but denied ever being alone with her or having sexual contact with her. Subsequently, DNA analysis revealed that the washcloth K.G. gave police contained sperm-cell fractions from a mixture of two or more people. The predominant profile matched Cobb's, and an expert later testified that it "would not be expected to occur more than once in the world['s] population." In August 2013, Sergeant Cottingham ordered Cobb's arrest and interviewed him again. He confronted Cobb with the DNA results from the washcloth. Cobb admitted to sexual contact with K.G., but claimed that it was consensual. He stated that K.G. initiated oral sex and that he was embarrassed about it.

Cobb was charged with third-degree criminal sexual conduct in violation of Minn. Stat. § 609.344, subd. 1(c) (2012) (sexual penetration—force or coercion). At a pretrial

3

hearing, Cobb moved to admit evidence of K.G.'s previous sexual conduct pursuant to Minnesota Rule of Evidence 412. As an offer of proof, Cobb presented evidence of three allegedly similar incidents involving K.G. becoming "sexually aggressive once she is intoxicated," which he argued established a common scheme or plan of similar sexual conduct. The district court, in denying Cobb's motion, found that the evidence was "completely unrelated to this incident" and was "highly inflammatory and unfairly prejudicial."

At trial, Cobb testified in his own defense. He claimed that he went to S.C.'s apartment at about 9:00 p.m. on April 20, 2013, to get some money. He stated that he found S.C. in K.G.'s apartment, that K.G. and S.C. had been drinking, and that K.G. gave him a hug. Cobb stated that he went to the liquor store and then returned to S.C.'s apartment, but S.C. did not answer her door, so he went to look for her at K.G.'s apartment. Cobb claimed that he was sitting on the couch in K.G.'s apartment when his hand accidentally touched K.G.'s thigh. He claimed that he immediately moved his hand away, but K.G. grabbed his hand and put it back on her thigh. Cobb claimed that K.G. then sat on his lap and started kissing him. He testified that he placed K.G. back on the couch, but she got back on his lap. He claimed that he pushed her away, but she unzipped his pants as he stood up and initiated oral sex. He claimed that he eventually gave in to K.G.'s advances. He stated that, at some point, K.G. told him not to ejaculate in her mouth and then continued to give him oral sex. Cobb admitted that he eventually ejaculated on K.G.'s face. He stated that they cleaned up with washcloths, K.G. kissed him and asked him not to tell anyone about the encounter, and then he left.

4

The jury returned a verdict of guilty. Based on the severity of the offense and Cobb's criminal history, his presumptive guidelines sentence was an executed prison term of 62 months, with a range of 53 to 74 months. *See* Minn. Sent. Guidelines 4.B (2012). The presentence investigation report recommended a double upward durational departure from the presumptive sentence to a sentence of 124 months. The state moved for an upward durational departure based on aggravating factors.

Cobb waived his right to have a jury make findings as to whether any aggravating factors were present. *See Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). The district court found that: (1) Cobb had a prior criminal-sexual-conduct conviction; (2) the crime was committed with particular cruelty because Cobb ejaculated on the victim's face; and (3) the crime occurred in the victim's zone of privacy. The district court expressed concern that, in addition to Cobb's two criminal-sexual-conduct convictions, he has "had a number of sexual assaults that have gone unreported and not charged." While addressing Cobb, the district court added: "[I]n terms of what you've done in your very young life, in terms of preying upon people that are more vulnerable than you, the age span here that you have victimized is terribly concerning . . . ." The district court imposed an executed sentence of 110 months, an upward durational departure of 48 months. The district court also imposed a lifetime conditional-release period. This appeal followed.

5

**D E C I S I O N**

**I.**

Cobb argues that the district court abused its discretion by denying his motion to admit evidence of the victim's previous sexual conduct. We review the district court's evidentiary rulings for an abuse of discretion. *State v. Davis*, 546 N.W.2d 30, 33 (Minn. App. 1996), *review denied* (Minn. May 21, 1996). The district court denied Cobb's motion pursuant to Minnesota Rule of Evidence 412, often referred to as the "rape shield rule." Minn. R. Evid. 412, 2006 comm. cmt. The rule provides:

> (1) In a prosecution for acts of criminal sexual conduct, . . . evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order under the procedure provided in [this rule]. Such evidence can be admissible only if the probative value of the evidence is not substantially outweighed by its inflammatory or prejudicial nature and only in the following circumstances:
> (A) When consent of the victim is a defense in the case,
> (i) evidence of the victim's previous sexual conduct tending to establish a common scheme or plan of similar sexual conduct under circumstances similar to the case at issue, relevant and material to the issue of consent . . . .

Minn. R. Evid. 412(1)(A)(i); *see also* Minn. Stat. § 609.347, subd. 3 (2012) (containing similar language).

Cobb argues that he had a constitutional right to present evidence that was material and favorable to his theory that K.G. consented to have oral sex. "Every criminal defendant has a right to fundamental fairness and to be afforded a meaningful opportunity to present a complete defense." *State v. Crims*, 540 N.W.2d 860, 865 (Minn.

6

App. 1995) (quotation omitted), *review denied* (Minn. Jan. 23, 1996). "The right to present a defense includes the opportunity to develop the defendant's version of the facts . . . ." *Id.* A defendant also has the right to confront adverse witnesses in order to reveal bias or a disposition to lie. *Id.* "To vindicate these rights, courts must allow defendants to present evidence that is material and favorable to their theory of the case." *Id.* at 866.

The rape shield rule usually does not affect a defendant's right to present a defense, however, because the rule is based on "the premise that a [victim's] character is generally irrelevant to a specific case." *Davis*, 546 N.W.2d at 34. "However, when a victim's sexual history involves a *pattern* of *clearly* similar behavior constituting habit or modus operandi and is favorable to the defendant's theory of consent, the evidence becomes relevant, material, and *potentially* admissible as a matter of constitutional law." *Id.*; *see also Crims*, 540 N.W.2d at 866. "To qualify as a pattern of clearly similar sexual behavior, the sexual conduct must occur regularly and be *similar in all material respects*." *Davis*, 546 N.W.2d at 34 (emphasis added).

Cobb sought to present evidence under rule 412 "of [K.G.'s] pattern of inviting guests into her apartment, drinking heavily, and then acting sexually aggressive in order to solicit sexual activity." According to Cobb, "[K.G.'s] method was always the same and was similar to what occurred in Cobb's case in all material respects." His offer of proof included three instances of K.G. drinking heavily with friends and becoming "sexually aggressive":

> 1. About a month prior to the incident in this case, K.G. and S.C. were drinking together when K.G. allegedly tried to touch S.C.'s breasts.

7

2. About two months prior to the incident in this case, K.G. allegedly made sexual advances toward a male neighbor, W.B., while K.G. was intoxicated. K.G. allegedly danced on W.B.'s lap in a seductive manner and stopped when W.B.'s daughter walked into the room.

3. Some other time when K.G. was intoxicated, she allegedly danced in front of W.B. and allowed him "to see her private parts." S.C. witnessed this incident.

Under Cobb's consent theory, K.G. was intoxicated when he returned to her apartment on April 20, 2013. They were alone in the apartment, sitting on the couch, when K.G. jumped into his lap and began acting sexually aggressive. Cobb resisted at first, but eventually gave in to her advances, and K.G. initiated consensual oral sex.

The three incidents described in Cobb's offer of proof are not similar in all material respects to Cobb's version of the April 20 incident, for several reasons. First, none of the three alleged incidents led to sex, let alone oral sex. Second, none of K.G.'s alleged prior behaviors were obviously intended to "solicit sexual activity," as Cobb claims. Third, at least one of the alleged incidents occurred in the presence of a third person. And fourth, one of the alleged incidents involved K.G. acting "sexually aggressive" toward a woman, not a man.

"[T]he victim's sexual history is normally irrelevant in a sexual assault prosecution," *Crims*, 540 N.W.2d at 867, and the victim's "sexual history is irrelevant to the charge of rape without evidence of modus operandi," *id.* at 868. The three incidents described in Cobb's offer of proof do not establish a common scheme or plan under the rape shield rule because there is "no pattern of *clearly* similar behavior." *See id.* Moreover, given the significant variations between the three prior incidents, they cannot

8

possibly constitute modus operandi. *See id.* (citing with approval an Illinois case that defines modus operandi narrowly). Accordingly, the district court did not abuse its discretion by excluding evidence of K.G.'s previous sexual conduct.

Cobb also argues that the rape shield rule should have "yield[ed]" to his constitutional right to present a complete defense, citing *State v. Benedict*, 397 N.W.2d 337 (Minn. 1986), and *State v. Caswell*, 320 N.W.2d 417 (Minn. 1982). But, the rape shield rule can only yield, in certain cases, if the proffered evidence satisfies Minn. R. Evid. 403. *See Caswell*, 320 N.W.2d at 419 ("[A]ny time evidence tends to establish a predisposition to fabricate a charge of rape, the evidence should be admitted unless its potential for unfair prejudice substantially outweighs its probative value."); *Crims*, 540 N.W.2d at 866 ("[A] defendant has *no* right to introduce evidence that either is irrelevant, or whose prejudicial effect outweighs its probative value."). In this case, Cobb offered no evidence that K.G. made prior allegations of sexual assault that were fabricated, which would have been more probative of K.G.'s credibility. Instead, Cobb only offered evidence of K.G.'s prior sexual behavior, which is not probative in a criminal sexual conduct case absent modus operandi. We conclude that the district court did not abuse its discretion by denying Cobb's motion to admit evidence of K.G.'s previous sexual conduct because it properly found that Cobb's proffered evidence was "completely unrelated to this incident" and was "highly inflammatory and unfairly prejudicial."

**II.**

Cobb next argues that the district court abused its discretion by sentencing him to 110 months in prison, an upward durational departure of 48 months from the presumptive

9

guidelines sentence of 62 months. We review an upward durational departure for an abuse of discretion. *State v. Jackson*, 749 N.W.2d 353, 356–57 (Minn. 2008). But, whether the district court's reasons for the departure are proper is a legal issue that we review de novo. *Dillon v. State*, 781 N.W.2d 588, 595 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). If the reasons given by the district court justify the departure, the departure will be affirmed. *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985). If the reasons given are improper or inadequate, and there is insufficient evidence in the record to justify the departure, the departure will be reversed. *Id.*

"Requests for durational departures require the district court to consider whether the conduct involved in the offense of conviction was significantly more or less serious than the typical conduct for that crime." *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). The sentencing guidelines contain a nonexclusive list of aggravating factors that may justify an upward departure. Minn. Sent. Guidelines 2.D.3.b (2012). When a defendant waives his right to a sentencing jury, the district court must determine beyond a reasonable doubt whether any alleged aggravating factors exist. Minn. Stat. § 244.10, subd. 7 (2012). The district court relied on three aggravating factors to justify its upward durational departure: a prior criminal-sexual-conduct conviction, particular cruelty, and zone of privacy. Cobb disputes each aggravating factor.

Cobb argues that the district court improperly relied on his prior criminal-sexual-conduct conviction as an aggravating factor "because it [was already] used in calculating

[his] criminal history score" and because it was also "used for determining the term of conditional release." His arguments are unpersuasive.

In 2004, Cobb was adjudicated delinquent of fourth-degree criminal sexual conduct in an extended jurisdiction juvenile (EJJ) proceeding. "An [EJJ] conviction shall be treated in the same manner as an adult felony criminal conviction for purposes of the [s]entencing [g]uidelines." Minn. Stat. § 260B.245, subd. 1(a) (2012); *see State v. Jiles*, 767 N.W.2d 27, 29 (Minn. App. 2009) ("EJJ adjudications are considered convictions for purposes of sentencing."), *review denied* (Minn. Aug. 26, 2009). In general, a prior conviction cannot constitute an aggravating factor because it is already used to calculate a defendant's criminal history score. *State v. Peake*, 366 N.W.2d 299, 301 (Minn. 1985). But, the supreme court has indicated that certain prior felony convictions may serve as an aggravating factor notwithstanding this general rule. *See id.* ("The guidelines recognize the unfairness of treating all felonies the same in determining criminal history."). The prior-criminal-sexual-conduct-conviction aggravating factor is one such exception. Under the sentencing guidelines, Cobb's EJJ conviction clearly constitutes a valid aggravating factor. *See* Minn. Sent. Guidelines 2.D.3.b(3) (citing as an aggravating factor that "[t]he current conviction is for a criminal sexual conduct offense, . . . and the offender has a prior felony conviction for a criminal sexual conduct offense . . . ."); *see also* Minn. Stat. § 244.10, subd. 5a(a)(3) (2012) (same).

Cobb provides no authority for his additional claim that a criminal-sexual-conduct conviction cannot be used both as an aggravating factor and to determine the term of conditional release. Therefore, he has waived this claim. *State v. Wembley*, 712 N.W.2d

783, 795 (Minn. App. 2006) ("An assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection.") (quotation omitted), *aff'd*, 728 N.W.2d 243 (Minn. 2007). Accordingly, the district court properly concluded that the aggravating factor of Cobb's prior criminal-sexual-conduct conviction is a substantial and compelling ground to support the departure and that this aggravating factor exists beyond a reasonable doubt.

Cobb appears to argue that the particular-cruelty aggravating factor, based on his ejaculating on K.G.'s face, was not proved because "it is hard to imagine that ejaculation somewhere was not contemplated as part of the commission of this particular offense." This argument is without merit. Under well-established precedent, ejaculating on a victim's face is a valid particular-cruelty aggravating factor. *State v. Griffith*, 480 N.W.2d 347, 350 (Minn. App. 1992) ("Appellant ejaculated on the victim's face. This was particularly demeaning and humiliating, and went beyond the inherent humiliation a victim of third-degree criminal sexual [conduct] must experience."), *review denied* (Minn. Mar. 19, 1992), *superseded by statute on other grounds*, Minn. Stat. § 609.341, subd. 9(b) (1994). The district court properly concluded that the aggravating factor of particular cruelty is a substantial and compelling ground to support the departure and that this aggravating factor exists beyond a reasonable doubt.

Cobb also argues that the zone-of-privacy aggravating factor was not proved. The state argues that, even if the zone-of-privacy factor was not proved, the aggravating factor of "exploitation of trust" was proved. We need not decide whether a third aggravating factor was proved, however, because the first two aggravating factors that the

district court properly relied on were sufficient to justify the upward durational departure in this case, which amounted to less than double the presumptive sentence. *See Dillon*, 781 N.W.2d at 596 ("We have found no cases in which an appellate court has held that adequate grounds to depart exist but that the district court abused its discretion by extending the sentence up to twice its presumptive term."); *cf. State v. Mohamed*, 779 N.W.2d 93, 96–97, 100 (Minn. App. 2010), *review denied* (Minn. May 18, 2010) (indicating that, in some circumstances, an upward durational departure amounting to less than double the presumptive sentence could be properly based on a single aggravating factor). The district court did not abuse its discretion by imposing the upward durational departure.

### III.

Cobb also argues that the district court erred by imposing a lifetime conditional-release term because he does not have "a previous or prior sex offense conviction" within the meaning of Minn. Stat. § 609.3455, subd. 7(b) (2012). The state concedes that Cobb's argument is correct. Statutory interpretation is a question of law, which we review de novo. *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002).

Section 609.3455, subdivision 7(b), provides that when "the offender has a previous or prior sex offense conviction, the court shall" impose a lifetime conditional-release term. For purposes of this section, the term "conviction" includes "conviction as an extended jurisdiction juvenile under section 260B.130 for a violation of, or an attempt to violate, section 609.342, 609.343, 609.344, or 609.3453, *if the adult sentence has been executed*." Minn. Stat. § 609.3455, subd. 1(b) (2012) (emphasis added).

13

Cobb is correct that the district court erred by imposing a lifetime term of conditional release, for two reasons. First, Cobb's prior EJJ conviction was for fourth-degree criminal sexual conduct, in violation of Minn. Stat. § 609.345 (2002). But, a prior conviction under section 609.345 is not included in the applicable definition of a "conviction" under the lifetime-conditional-release statute. *See id.* Second, there is no evidence in the record that the adult sentence underlying Cobb's prior EJJ conviction was ever executed, as is required under the definitions statute. *See id.* Minn. Stat. § 609.3455, subd. 6 (2012), requires the district court to impose a ten-year term of conditional release for a person convicted of third-degree criminal sexual conduct, as Cobb was in the present case. Therefore, we reverse the district court's imposition of a lifetime conditional-release term and remand for imposition of a ten-year conditional-release term.

**Affirmed in part, reversed in part, and remanded.**