Willie James JEFFRIES, Jr., Appellant,

v.

Crispus C. NIX, Warden, Appellee.

No. 89–2358.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1990.

Decided Aug. 30, 1990.

Rehearing and Rehearing En Banc
Denied Oct. 3, 1990.

Randall C. Wilson, Des Moines, Iowa, for appellant.

Thomas D. McGrane, Des Moines, Iowa, for appellee.

Before BEAM, Circuit Judge, ROSS, Senior Circuit Judge, and RENNER,[*] District Judge.

BEAM, Circuit Judge.

Willie James Jeffries, Jr. appeals from the district court's[1] denial of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (1988). In 1986, Jeffries was convicted by a jury of sexual abuse in the first degree. On appeal, Jeffries argues that: the district court erred in denying his petition because the trial court should have allowed Jeffries to present evidence of his victim's prior sexual conduct, and of her alleged drug-induced delusions of sexual abuse. Because the Iowa rape shield law, Iowa R.Evid. 412, prohibits Jeffries from introducing evidence of his victim's prior consensual relationships, we affirm the district court. We also find that the victim's prior sexual delusions are not "past sexual behavior" as defined by Iowa's rape shield law and, thus, evidence of these delusions could have been presented to the jury. However, the exclusion of this evidence was harmless error in light of the victim's testimony about her hallucinations resulting from her drug use, and the overwhelming evidence against Jeffries.

## I. BACKGROUND

In October of 1985, Freda Crawford entered the Iowa Lutheran Hospital in Des Moines, Iowa. She was admitted to the drug rehabilitation center for teenagers.

See Appellant's Add. at 4, 7 (direct examination of Crawford). Approximately one year earlier, Crawford had been admitted to the same rehabilitation center. Id. at 8. Crawford testified at trial that during her stay in 1985, she heard rumors that she was going to be transferred to the mental unit. Id. at 9. Thus, Crawford decided to run away and get high on drugs. She left the hospital at approximately 10:30 p.m., and hitched a ride to the intersection of 10th and Locust streets in downtown Des Moines. Crawford could not remember the date of her departure. Id. at 9–11, 55. Recognizing an individual from her previous visits in the downtown area, Crawford asked where she could obtain drugs. As she was conversing with this individual, three men in a black El Camino stopped at the intersection. Crawford recognized one of the men as "Larry," but she did not know the white male, or the black male identified at trial as Jeffries. Id. at 12–14. The men informed Crawford that they had "stuff," meaning drugs, and coaxed her to get into the El Camino with them. Id. at 15.

The men subsequently bought orange Mad Dog wine, drove to a wooded area near the Des Moines river, and everyone smoked marijuana and drank the wine. Id. at 15–18. Jeffries then said to the white male, "I get her first," and the unidentified white male got out of the car and disappeared.[2] Id. at 18. Jeffries unbuttoned his jeans, grabbed Crawford's head, and attempted to force her to perform oral sex on him. Id. at 18–20. Crawford refused and Jeffries hit her in the face and pushed her head down. Crawford bit Jeffries's penis, and while she was biting him, she started the car with her left hand and stepped on the accelerator with her left foot. At that point, Jeffries bit Crawford's left hand. Id. at 20–21. The white male reappeared, pulled Crawford out of the El Camino, removed Crawford's shoes and

---

* The HONORABLE ROBERT G. RENNER, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

2. It is unclear what happened to "Larry." Apparently, he was not around after the initial stop at 10th and Locust streets.

jeans, and then he and Jeffries dragged Crawford behind the car and removed her underwear. *Id.* at 21, 29–30. Jeffries engaged in both anal and vaginal intercourse with Crawford, and she began hitting him with a stick. Jeffries muttered that Crawford did not satisfy him, returned to the car, took off his underwear, and offered it to Crawford to wear. *Id.* at 29–31. Crawford donned the underwear and ran into a mud puddle near some trees. Jeffries sighted her and Crawford jumped into the Des Moines River. Jeffries told Crawford to get out of the water so Crawford crawled out and attempted to run. After falling several times, she walked along the road with Jeffries following her. Jeffries again forced Crawford to engage in anal and vaginal intercourse and then asked her if she planned to report the incident to the police. Crawford responded that she loved him and would not report the rape. *Id.* at 32–35. The two returned to the car but the El Camino was gone, so they both went their own way. Crawford telephoned the police, who picked her up at the scene and rushed her to Lutheran Hospital. *Id.* at 35–37. The hospital personnel examined her in the emergency room and then placed her in the mental unit. Five days later, hospital personnel discovered that Crawford had a broken jaw, black eye, cuts on her shoulders and legs, and teeth marks on her hand. *Id.* at 39–43.

The State of Iowa filed a Trial Information in Polk County District Court on January 13, 1986, charging Jeffries with sexual abuse in the first degree. *Id.* at 1 (copy of Trial Information). On March 26, 1986, the jury found Jeffries guilty and the court

sentenced him to a term of life imprisonment on May 6, 1986. *Id.* at 119, 126 (copy of verdict form and sentencing proceedings). On October 28, 1987, the Iowa Court of Appeals affirmed Jeffries's conviction and sentence. *State v. Jeffries,* 417 N.W.2d 237 (Iowa Ct.App.1987). In 1988, the Iowa Supreme Court denied Jeffries's petition for further review. *See* Appellant's Add. at 136 (copy of Supreme Court order). On April 1, 1988, Jeffries filed his petition for writ of habeas corpus which the district court denied. *Id.* at 137 (copy of Jeffries's petition); *Jeffries v. Nix,* No. 88–173–A (S.D.Iowa July 6, 1989).

## II. DISCUSSION

### A. Evidence of prior sexual behavior

Jeffries argues that he should have been allowed to present evidence at trial of Crawford's prior sexual behavior. Upon her admission to the drug rehabilitation unit in October of 1985, Crawford told Dr. J. Schoon about her sexual experiences. In his written report, Dr. Schoon indicated that Crawford told him that she had been "voluntarily sexually active for the last year." *See State v. Jeffries,* 417 N.W.2d at 238. Crawford told Dr. Schoon that she did not like sex because it hurt and was very uncomfortable. She also reported that she engaged in sex to get drugs, and that on a few occasions she had sex with strangers for money. *Id.*

At trial, Jeffries attempted to question Crawford about her statements to Dr. Schoon. The prosecutor objected on the basis that the line of questioning violated Iowa's rape shield law.[3] Appellant's Add.

---

3. Iowa's rape shield law provides:

 (a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual abuse, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual abuse is not admissible.

 (b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual abuse, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

 (1) admitted in accordance with subdivisions "c"(1) and "c"(2) and is constitutionally required to be admitted; or

 (2) admitted in accordance with subdivision "c" and is evidence of:

 (A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

 (B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which sexual abuse is alleged.

at 61–62 (record made out of jury's presence). The court sustained the objection. *Id.* at 63–64. Jeffries also attempted to have Dr. Donna Edison, Crawford's treating physician at the drug rehabilitation center, testify at trial. Jeffries indicated that Dr. Edison would testify that she believed that Crawford was delusional, because Crawford had told her that she thought that an individual in group therapy was going to rape her. Dr. Edison believed that Crawford's delusions stemmed from drug and alcohol abuse, along with her experiences of being sexually abused by two brothers, one being a stepbrother. *Id.* at 87–88. The court sustained the prosecutor's objection to this testimony on the basis that it also violated Iowa's rape shield law. *Id.* 90–91.

During his testimony, Jeffries stated that Crawford offered to have sex in order to reimburse the men for the marijuana and wine. Jeffries attempted to offer Dr. Schoon's report to corroborate his testimony. The court again refused to allow this evidence into the record. *Id.* at 101, 107–110. Jeffries then requested that he be allowed to call Crawford as a witness so that she could testify regarding whether she previously engaged in sex to obtain drugs. The court denied this request. *Id.* at 109–110. Jeffries renewed all of his requests to present the report and testimony. The court overruled his requests, but did receive Dr. Schoon's report and Dr. Edison's proposed testimony as offers of proof. *Id.* at 111.

Jeffries argues that the evidence he offered at trial was admissible pursuant to Iowa's rape shield law. As indicated, Iowa R.Evid. 412(b)(1) provides that:

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual abuse, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

(1) admitted in accordance with subdivisions "c"(1) and "c"(2) and is constitutionally required to be admitted.

Jeffries asserts that his evidence was "constitutionally required to be admitted" because without the evidence he was denied his constitutional sixth amendment right of confrontation and fourteenth amendment due process right to a fair trial. *See* U.S. Const. amends. VI, XIV. Jeffries contends that his state constitutional rights to confrontation and due process were also violated. *See* Iowa Const. art. I, §§ 9, 10. In addition, Jeffries claims a violation of his

(c)(1) If the person accused of sexual abuse intends to offer under subdivision "b" evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subdivision "b", the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding Iowa R.Evid. [sic] 104"b", if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which sexual abuse is alleged.

Iowa R.Evid. 412.

right to compulsory process to obtain and preserve witnesses to testify on his behalf. *See* U.S. Const. amends. VI, XIV; Iowa Const. art. I, § 10.

 The rape shield law is an exception to the general rule that evidence with some relevance is generally admissible. *See State v. Clarke,* 343 N.W.2d 158, 160–61 (Iowa 1984). The purpose behind the rule is to protect the victim's privacy, to encourage reporting of sexual assaults, and to prevent wasting time on distractive collateral matters. *See State v. Ogilvie,* 310 N.W.2d 192, 195 (Iowa 1981). "[E]vidence of a victim's past sexual behavior is, except for very narrowly defined purposes, irrelevant to the charge of rape." *Cruz–Sanchez v. Rivera–Cordero,* 835 F.2d 947, 949 (1st Cir.1987). Irrelevant evidence is not constitutionally required to be admitted. *Clarke,* 343 N.W.2d at 161. "Even relevant evidence is not constitutionally required to be admitted if the prejudicial effect outweighs the probative value." *Id.*

In this case, Crawford's background is at issue. Jeffries argues that the court was constitutionally required to admit Dr. Schoon's report and Dr. Edison's testimony because this evidence would have: (1) rebutted the character evidence presented by the state; (2) proved consent by showing that Crawford was a prostitute; and (3) proved consent by showing that Crawford had engaged in a similar pattern of prior sexual acts. Brief for Appellant at 20.

### 1. Rebutting character evidence

 Jeffries asserts that the state painted a "very flowery, homey picture" of Crawford as a young woman from a good family. *Id.* at 26. The state focused on Crawford's hard-working mother, Crawford's attempts to say "no" to drugs, Crawford's heartwarming job at a convalescent home for children, and her attempts to get her high school degree. Even though the state emphasized Crawford's positive actions and Jeffries was not allowed to present evidence of her past sexual activities, we find that the jury did not walk away with a distorted view of Crawford's past. Crawford testified that she had been

in the drug rehabilitation center twice, and that she drank a lot of alcohol and frequently used drugs, including LSD and marijuana. Appellant's Add. at 7–8, 45. Crawford testified that on the evening of the rape, she got in the El Camino with Jeffries and the white male because they were going to provide drugs and alcohol. *Id.* at 15. She also testified that she was on medication, Thorazine, on the evening of the assault. *Id.* at 55. Crawford indicated that she was not attempting to give the impression that she was inexperienced. When asked if she had previously lived with men in downtown Des Moines, Crawford testified that she lived with one man. Trial Transcript at 73, 123. She testified that while in the hospital, personnel gave her medication to control her delusions. Appellant's Add. at 49 (direct examination of Crawford). In addition, Crawford admitted to the jury that she hallucinated, had blackouts and temper tantrums, and manipulated individuals in the rehabilitation center. *Id.* at 51, 56; Trial Transcript at 82, 89.

The district court found that Crawford's testimony regarding her family life and work at a convalescent center for children did not create an inference of chastity. We agree that no inference was created. Accordingly, the prosecutor did not, as Jeffries contends, open the door for rebuttal evidence of Crawford's prior sexual history and possible sexual delusions.

In addition, the evidence which Jeffries attempted to introduce is irrelevant for rebutting Crawford's credibility. In *United States v. Kasto,* 584 F.2d 268 (8th Cir. 1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), the court referred to a similar argument which was advanced in the 1891 case of *State v. Coella,* 3 Wash. 99, 28 P. 28 (1891). The *Coella* court stated that "[s]he [the prosecutrix] could not have ruthlessly destroyed that quality [chastity] upon which most other good qualities are dependent, and for which, above all others, a woman is reverenced and respected, and yet retain her credit for truthfulness unsmirched." *Kasto,* 584 F.2d at 271–72 n. 3 (quoting *Coella,* 28 P. at 29). This line of argument, how-

ever, has been rejected. "It is obvious that the mere fact of unchastity of a victim has no relevance whatsoever to her credibility as a witness." *Id.* Accordingly, Jeffries's contention that his constitutional rights were violated fails because the Constitution requires only the introduction of relevant and admissible evidence. *See United States v. Nixon*, 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974); *Kasto*, 584 F.2d at 272.

### 2. *Proving consent by prostitution*

■ Jeffries's second assertion, that Dr. Schoon's report and Dr. Edison's testimony were necessary to show Crawford's consent because she was a prostitute, is without merit. The rape shield law was enacted to prevent this type of argument from being advanced based on a victim's past sexual history. As the court in *Cruz–Sanchez*, 835 F.2d at 948–49, stated, "[a] woman does not waive her right to refuse to have sex on one occasion by consenting to sex on a prior one, even under circumstances that some might consider unacceptable." Thus, even if Crawford did exchange sex for money on previous occasions, there is no evidence that she offered to do so in this situation. Nor is there any evidence that Jeffries knew of any exchanges by Crawford before this incident. Any knowledge that Jeffries acquired after the assault concerning Crawford's past sexual behavior is irrelevant to whether Crawford voluntarily engaged in sexual relations with him. *See Doe v. United States*, 666 F.2d 43, 48 (4th Cir.1981).

Jeffries attempted to bolster this argument by citing cases in which courts found evidence of prostitution admissible. In *State v. Superior Court*, 113 Ariz. 22, 545 P.2d 946, 953 (Ariz.1976), the court stated that "[w]here, for instance, the defendant alleges the prosecutrix actually consented to an act of prostitution, the accused should be permitted to present evidence of her reputation as a prostitute and her prior acts of prostitution to support such a defense." The court, however, also emphasized that "[t]he fact that a woman consented to sexual intercourse on one occasion is not substantial evidence that she

consented on another, but in fact may indicate the contrary." *Superior Court*, 545 P.2d at 952.

Jeffries also cited *People v. Varona*, 143 Cal.App.3d 566, 192 Cal.Rptr. 44 (Cal.Ct. App.1983), in which the defendants claimed that they were not guilty of sexual assault in the form of oral sex because the woman had solicited them to engage in acts of prostitution. After engaging in the alleged conduct, the woman became enraged because the defendants had no money. The defendants attempted to offer evidence that the woman had earlier pleaded guilty to prostitution and was on probation at the time of the trial. The trial court excluded that evidence and the prosecutor argued to the jury that there was no evidence that the woman was a prostitute. The court of appeals reversed. The court stated that "[w]e do not, here, hold that in every rape case where the prosecutrix is a prostitute, that evidence of that fact must be admitted to show consent." *Varona*, 192 Cal.Rptr. at 46. The court noted that in the case before it, however, the official records showed that: (1) the woman was a prostitute; (2) in pursuit of her profession she walked the streets at night to solicit customers; and (3) she specialized in oral sex. *Id.*

We find that these cases are a far cry from the case before us. As indicated, Jeffries never testified that Crawford solicited him for acts of prostitution. There also was no official record or reputation evidence that Crawford was a prostitute. Thus, Dr. Schoon's report was properly excluded under the rape shield law. In addition, evidence of Crawford's past sexual behavior was irrelevant to her charge of rape. Accordingly, Jeffries's constitutional challenge also fails under his second argument because he has no constitutional right to introduce irrelevant evidence of Crawford's past sexual behavior.

### 3. *Proving consent by showing similar acts*

■ Under his third argument, Jeffries contends that Dr. Schoon's report would

show that Crawford admitted exchanging sex for drugs and, thus, the evidence would prove Crawford's consent by showing that Crawford engaged in a similar pattern of prior sexual acts. There is no evidence in this case, however, that the parties bargained in advance for an exchange of sex for wine and marijuana. As indicated, Jeffries testified that after Crawford consumed the substances, she wanted to reimburse him for the Mad Dog and marijuana. Appellant's Add. at 101 (direct examination of Jeffries). During oral sex, however, she bit him so hard that she caused his penis to bleed and swell. *Id.* at 104. Jeffries also testified that he gave Crawford a "[p]retty good hit" in the face and "back-smacked her right across her right side." *Id.* at 103. It does not appear that this was a simple exchange of sex for drugs, nor does Dr. Schoon's report demonstrate that Crawford engaged in a similar pattern of prior sexual acts. Further, under the Iowa rape shield law, the only evidence allowed for the purpose of showing a victim's consent is "past sexual behavior with the accused [which] is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which sexual abuse is alleged." Iowa R.Evid. 412(b)(2)(B).

In this case, Jeffries is not attempting to show that he has engaged in sexual relations with Crawford on previous occasions. Jeffries did not know Crawford before the night of the assault. Thus, evidence of Crawford's past behavior in order to show consent and a pattern of similar prior sexual acts is prohibited by the Iowa rape shield law. Also, the evidence is irrelevant for the purpose for which Jeffries offered it. Accordingly, his constitutional rights have not been violated by the trial court's denial of introduction of this evidence.

### B. Evidence of sex abuse delusions

As indicated, Jeffries asserts that Dr. Edison's testimony would have included Crawford's statement that she believed that a man in her group therapy was going to rape her. Dr. Edison also would have opined that Crawford's sex-abuse delusions stemmed from Crawford's drug and alcohol abuse and her past sexual experiences, including sexual abuse by Crawford's brothers. We believe that the trial court could have allowed Dr. Edison's testimony concerning Crawford's delusions, and disallowed part of the testimony concerning the reasons for the delusions, without violating the Iowa rape shield law. We believe that delusions about sexual abuse are not "past sexual behavior" as defined in Rule 412(d). We hold that exclusion of the evidence, however, was, at most, harmless error because of Jeffries's testimony at trial. Jeffries admitted that he and Crawford engaged in sexual relations. He also admitted that he hit her in the face a couple of times and he "back-smacked her right across her right side." Appellant's Add. at 103. As a result, Crawford suffered from a broken jaw, she had an abrasion and bruise on her left cheek bone, her left eye was swollen shut, three front teeth were loose, she had blood in her mouth, and she had an abrasion on her shoulder. *Id.* at 71–72, 77. (direct testimony of Dr. Tracy Bailey who examined Crawford when she was brought into the emergency room, and who re-examined Crawford's x-rays a week later to discover a broken jaw). In addition, Crawford's pubic hair was dirty and had gravel in it, her vaginal introitus was slightly inflamed, she had teeth marks on her hand, and her legs were covered with dirt, scratches, abrasions, and gravel. *Id.* While evidence of a victim's prior sexual delusions could persuade a jury to find that the victim had a delusion about an alleged sexual assault, we do not believe that to be the case here. The sexual contact was obviously no delusion. Arguably, Crawford could have had a delusion concerning whether or not she initially consented. However, consent or lack thereof was not the subject matter of the testimony Dr. Edison was prepared to give. We also note that the jury heard Crawford's testimony that she hallucinated, and that she had been drinking wine and smoking marijuana on the evening of the assault. After examining this evidence, the jury convicted Jeffries on the strong evidence against him. We hold, therefore, that the denial of Dr.

Edison's testimony was harmless error beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

## III. CONCLUSION

Jeffries's federal and state constitutional rights of confrontation and due process were not violated by the trial court's denial of the admission of Dr. Schoon's report and Dr. Edison's testimony. Dr. Schoon's report was evidence of Crawford's past sexual behavior and, thus, it was prohibited by Iowa's rape shield law. The evidence was not admissible as an exception to the rape shield law because it was irrelevant. Thus, the trial court was not constitutionally required to receive it and Jeffries's rights were not violated. In addition, while a portion of Dr. Edison's proposed testimony concerning the nature of Crawford's sexual delusions was not prohibited by Iowa's rape shield law because it did not constitute "past sexual behavior," the trial court's exclusion of this evidence was harmless error in light of Crawford's testimony concerning her hallucinations and the overwhelming evidence against Jeffries. Accordingly, we affirm Jeffries's conviction and sentence.