**Adrian WILLIAMS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49S02–9706–CR–355.**

Supreme Court of Indiana.

June 6, 1997.

Frank C. Capozza, Roberta Anderson Staten, Kathleen Ransom Radford, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Janet L. Parsanko, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

A jury convicted defendant Adrian Williams of attempted criminal deviate conduct, a Class A felony, and criminal confinement, a Class B felony. A majority of the Court of Appeals reversed the convictions on the grounds that the trial court erred in excluding certain evidence. *Williams v. State*, 669 N.E.2d 178 (Ind.Ct.App.1996). Because we conclude that the evidence was properly excluded and no other reversible error occurred, we now grant transfer, vacate the opinion of the Court of Appeals, and reinstate the convictions.

This appeal raises the following issues:

1.  Did the trial court err by excluding evidence of the victim's prior drug use?

2.  Did the trial court err by excluding evidence of the victim's past sexual conduct pursuant to Indiana Evidence Rule 412?

3.  Did the trial court err by denying Williams' Motion for Continuance?

4.  Did the State engage in prosecutorial misconduct?

5.  Was the evidence sufficient to support Williams' convictions for attempted criminal deviate conduct and criminal confinement?

### Factual and Procedural History

During the early morning hours on January 9, 1993, the victim was working as a topless dancer at a nightclub in downtown Indianapolis. The following is her version of the events of that night. When she finished work at approximately 2:45 a.m., she walked out into the parking lot and asked two strangers, Williams and co-defendant Antoine Edmondson, for a ride home. The two men agreed and she got into the car. Williams did not drive the car directly to the victim's home. Instead, he told her that "they had to make a stop." He drove into an alley behind a different club where

Edmondson exited the car. The victim then attempted to run away but Edmondson grabbed her arms and pulled her into the back seat of the car. As the victim struggled with Edmondson in the car, Williams drove to a public park and stopped the car in a dark area of its parking lot.

The two then ordered the victim to engage in sexual acts with them simultaneously. Edmondson pulled a gun out of his pocket and placed it on the arm rest of the front seat. He then removed the victim's shoe and sock and pulled her right pants leg off. The victim managed to grab the gun, open the car door, and run away. As she ran, she fired the gun behind her and, although she apparently had never fired a weapon before, shot Edmondson in the jaw. Williams and Edmondson were subsequently arrested and each was charged with two counts of attempted criminal deviate conduct, criminal confinement, and carrying a handgun without a license. The two men were tried together.

Three days before trial, the State filed two motions in limine. In the first motion, the State sought to exclude evidence of the victim's sexual history pursuant to Indiana's Rape Shield Rule, Indiana Evidence Rule 412. Williams did not object to this motion. In the second motion, the State sought to exclude evidence of the victim's history of drug use. Williams did object to this motion, arguing that the victim's cocaine habit "would obviously make a difference as to her ability to recall facts, that it's something that the jury should consider in determining whether she is able to relate facts in an appropriate, truthful, factual manner." The trial court granted both motions and excluded the evidence of both the victim's sexual history and her prior drug use. However, Williams was allowed to question the victim about drug use at the time of the incident.

During the trial of the two defendants, the victim testified on cross-examination that she did not use cocaine on the day of the incident or on the day of the trial. At defense counsel's request, the court conducted a hearing outside the presence of the jury regarding the exclusion of evidence of the victim's prior drug use. Williams joined in Edmondson's argument that the victim's prior drug use was pertinent to her credibility. Williams specifically argued that she had "a poor recall of the facts because of her cocaine habit." The trial court stood by its original decision to exclude the evidence. Thereafter, defense counsel made an offer of proof and the victim testified, outside the hearing of the jury, that she was previously addicted to cocaine and had received treatment.

Later during the trial, both Williams and Edmondson testified that the victim wanted the men to locate some cocaine for her and when they could not find any, the men agreed to give her money in exchange for sex. Williams requested that the trial court lift its proscription on testimony as to prior drug use because the victim's prior drug use and alleged acts of prostitution were now at issue. The trial court denied the request. Defense counsel then made another offer of proof that a friend of the victim would testify that the victim had previously committed acts of prostitution in exchange for money or cocaine. This evidence was also excluded by the trial court. The jury found Williams guilty of one count of attempted deviate conduct and criminal confinement.[1]

## I. Evidence of the Victim's Prior Drug Use

Williams argues that he is entitled to a new trial because the trial court erred by refusing to allow the defense to inquire into the victim's prior drug use. The trial court allowed defense counsel to elicit testimony regarding the victim's use of drugs on the day of the incident because it was relevant to her ability to perceive and recall the events in dispute. However, prior drug use was held irrelevant.

Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evi-

---

1. The same jury found Edmondson guilty of attempted criminal deviate conduct, criminal confinement, and carrying a handgun without a license. His convictions were upheld by a different panel of the Court of Appeals in a memorandum decision. *Edmondson v. State,* 665 N.E.2d 74 (Ind.Ct.App.1996) (unpublished table decision).

dence." Ind. Evidence Rule 401. Before the adoption of the Indiana Rules of Evidence, Indiana courts consistently upheld decisions of trial courts excluding evidence of a witness' past drug use as irrelevant. *Kimble v. State,* 569 N.E.2d 653, 654 (Ind.1991) (victim's wife could be questioned regarding her drug use on the night in question but any questions about her past drug use were irrelevant); *Trice v. State,* 519 N.E.2d 535, 537 (Ind.1988) (testimony of government witness' alleged involvement in drug dealing was "totally irrelevant"); *McKim v. State,* 476 N.E.2d 503, 506 (Ind.1985) (extent of victim's use of drugs and alcohol would be pertinent only to her ability to recall the events on the dates in question had she been using drugs or alcohol at that time, or if she were on drugs at trial, or if her drug and alcohol abuse was so extensive that her mind was impaired); *Denney v. State,* 524 N.E.2d 1301, 1302–03 (Ind.Ct.App.1988) (evidence of witness' prior drug use is relevant only to the extent that 1) it affects the witness' ability to accurately recall the events on the date in question, or 2) the witness is unable relate the facts at trial, or 3) drugs have significant-ly diminished the witness' mental capacity). Indiana Evidence Rule 401 permits evidence relevant to a broader range of facts, but does not change the concept of relevance.[2] Therefore, we see no reason to deviate from these prior holdings.[3]

▇▇▇ In this case, the victim testified that she did not use drugs on the day of the incident. The defense's effort to question the victim about her prior drug use was justified solely on the basis of challenging her credibility. The jury had ample opportunity to assess the credibility of her testimony as defense counsel repeatedly challenged the accuracy of her memory. Moreover, there was no showing that the victim's consumption of drugs on prior occasions was of such a degree that it substantially affected her current ability to perceive, remember, or testify. Indeed, the trial court noted that there was no evidence presented of the victim's inability to recall the incident.[4] Therefore, the trial court did not abuse its discretion in excluding the evidence.[5] *See Willoughby v. State,* 660 N.E.2d 570, 580–81 (Ind.1996) (trial court has broad discretion to determine the admissibility of evidence).

**2.** As Judge Miller observes:

> The rule's definition of relevancy differs only slightly from earlier Indiana [case law]: the broader test of "any fact that is of consequence to the determination of the action" supplants the common law requirement that the evidence tend to prove or disprove a "material fact" or "fact in issue." The new phrase of Rule 401 extends the concept of relevancy to facts that are not in dispute, although trial courts retain the discretion to exclude such evidence under Rule 403 for waste of time.
> 12 R. MILLER, INDIANA PRACTICE § 401.101 at 217–18 (2d ed.1995) (footnotes omitted).

**3.** Other jurisdictions typically exclude evidence of general drug usage on relevancy grounds. *See, e.g., Jarrett v. United States,* 822 F.2d 1438, 1445 (7th Cir.1987) (witness' use of drugs is only relevant as to the witness' ability to perceive the underlying events and testify lucidly at trial); *see generally* David J. Oliveiri, Annotation, *Use of Drugs as Affecting Competency or Credibility of Witness,* 65 A.L.R.3d 705 (1975) (collecting cases).

**4.** We note that there may be instances where evidence of prior drug use may be found relevant to something other than mental capacity. *See* 4 WEINSTEIN & BERGER, FEDERAL EVIDENCE § 607.05[4] (2d ed.1997). However, even in those instances, relevance alone does not dictate admissibility. Relevant evidence may be excluded pursuant to Indiana Evidence Rule 403, if "its probative value is substantially outweighed by the danger of unfair prejudice...." Furthermore, credibility evidence is subject to other rules of admissibility. *See, e.g.,* Ind. Evidence Rules 607–613. In this case, we need not address Rule 403 or Rules 607–613 because we agree with the trial court's determination that the victim's drug history, in and of itself, is irrelevant.

**5.** Williams also argues that his right of confrontation assured by the Sixth Amendment of the United States Constitution was violated by refusal to permit cross-examination regarding the victim's prior drug use. Although the Sixth Amendment Confrontation Clause guarantees defendants the right to cross-examine witnesses, the trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits ... based upon concerns about among other things, harassment, prejudice, confusion of the issues, and the witness' safety, or interrogation that is repetitive or only marginally relevant." *Coates v. State,* 534 N.E.2d 1087, 1095 (Ind.1989) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986)). For the reasons set forth above, the trial court did not abuse its discretion and its actions did not violate the Sixth Amendment.

Additionally, the trial court properly excluded testimony of the victim's friend who would have testified about the victim's prior drug use. The trial court again found such testimony irrelevant unless the friend could testify that the victim used drugs on the date in question. As discussed above, the fact that the victim had used drugs, in and of itself, is not relevant. Accordingly, the trial court properly excluded the friend's testimony.

## II. Evidence of the Victim's Past Sexual Conduct

The trial court also properly excluded the friend's testimony that on prior occasions the victim had committed acts of prostitution in exchange for money or cocaine. Williams claims this testimony supports his defense that the victim consented and accompanied the men because they had promised to obtain drugs for her. The trial court excluded the friend's testimony regarding the victim's prior alleged acts of prostitution because evidence of a victim's past sexual conduct is not admissible except as provided in Indiana's Rape Shield Rule, Indiana Evidence Rule 412.[6] Rule 412 provides that in prosecutions for a sex crime, evidence of a victim's or witness' past sexual conduct is inadmissible, except in the following circumstances: 1) evidence of the victim's or witness' past sexual conduct with the defendant; 2) evidence that shows that some person other than the defendant committed the act upon which the prosecution is founded; 3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or 4) evidence of a conviction for a crime offered for impeachment under Rule 609. Otherwise stated, past incidents of consent, except in these limited circumstances, are not permitted to imply consent on the date in question.

■ None of the exceptions to Rule 412's general prohibition of inquiry into the victim's sexual history apply here. The evidence offered here was of the classic sort precluded by the Rape Shield Rule: purported incidents with other men at other times offered simply to show that the victim had consented in the past in the hope the inference will be drawn that she consented here. Rule 412 was enacted to prevent just this kind of generalized inquiry into the reputation or past sexual conduct of the victim in order to avoid embarrassing the victim and subjecting the victim to possible public denigration. *Stephens v. Miller*, 13 F.3d 998, 1002 (7th Cir.1994), *cert. denied*, 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15. The Rule reflects a policy first embodied in Indiana's Rape Shield Act, Indiana Code § 35–37–4–4, that inquiry into a victim's prior sexual activity is sufficiently problematic that it should not be permitted to become a focus of the defense. Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes. *See id.*

■ Balanced against these considerations is the defendant's right to present relevant evidence. For this reason, Rule 412 permits evidence of the defendant's past experience with the victim, but does not permit a defendant to base his defense of consent on the victim's past sexual experiences with third persons. The allegation of prostitution does not affect this calculus. We agree with the Fourth Circuit's view that it is "intolerable to suggest that because the victim is a prostitute, she automatically is assumed to have consented with anyone at any time." *United States v. Saunders*, 943 F.2d 388, 392 (4th Cir.1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992). Moreover, even when evidence does fall within one

---

**6.** The parties and the trial court refer to Indiana's Rape Shield Law. IND.CODE § 35–37–4–4 (1993). However, the Indiana Rules of Evidence went into effect on January 1, 1994, prior to Williams' trial held on August 8–10, 1994. Indiana Evidence Rule 412 incorporates the basic principles of Indiana Code § 35–37–4–4; however, the rule was not adopted verbatim from the statute. To the extent there are any differences, Evidence Rule 412 controls. *See Harrison*

*v. State*, 644 N.E.2d 1243, 1251 n. 14 (Ind.1995), *aff'd after remand*, 659 N.E.2d 480 (Ind.1995), *reh'g denied, cert. denied*, 519 U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996) (rules of evidence established by this court prevail over any statute); *Epstein v. State*, 190 Ind. 693, 696, 128 N.E. 353 (1920) (court has power to establish its own rules pursuant to the Constitution). Therefore, this opinion will address Evidence Rule 412.

of Rule 412's exceptions and is admissible, it is still subject to Evidence Rules 401 and 403. In this case, the evidence would shift the jury's attention away from the defendants' actions to the past acts of the victim. Any probative value is "substantially outweighed by the danger of unfair prejudice." Evid.R. 403. Thus, the trial court properly excluded the evidence.

■ Williams contends that the trial court's application of Indiana's Rape Shield Rule violates his Sixth Amendment right to present witnesses.[7] Indiana's Rape Shield Rule has repeatedly been held facially constitutional. *Moore v. Duckworth,* 687 F.2d 1063, 1067 (7th Cir.1982). However, "the constitutionality of such a law as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis." *Tague v. Richards,* 3 F.3d 1133, 1137 (7th Cir.1993) (citation omitted). Many jurisdictions acknowledge that a rape shield statute or rule serves to emphasize the general irrelevance of a victim's sexual history. *State v. Crims,* 540 N.W.2d 860, 865–69 (Minn.App.1995), *rev. denied* (1996) (citing cases).[8] Although there are instances where the application of the Rape Shield Rule may violate a defendant's Sixth Amendment right, this is not one of them. For example, admission of such evidence may be constitutionally required where the evidence is offered not to show the victim's consent but to establish some other point such as that an injury could have been inflicted by someone other than the defendant. *See Tague,* 3 F.3d at 1136–38. It may also be required when the trial court restricts a defendant from giving his own account of the events at issue. *Cf. Stephens,* 13 F.3d at 1017 (Coffey, J., dissenting). And the Sixth Amendment may be implicated when a defendant establishes that the victim engaged in a similar pattern of sexual acts. *Cf. Jeffries v. Nix,* 912 F.2d 982, 987–88 (8th Cir.1990) (essentially finding a

victim's sexual history irrelevant in the absence of compelling evidence of modus operandi); *People v. Sandoval,* 135 Ill.2d 159, 142 Ill.Dec. 135, 147, 552 N.E.2d 726, 738 (1990) (prior pattern exception applies to the admission of certain evidence which reveals activity marked by characteristics tending to show an individual's unique "signature").

■ In this case, there was no restriction on the ability of the defense to present evidence of the incident. The trial court allowed both defendants to testify that the victim agreed to perform sex acts in exchange for money. The jury was informed through testimony of the defendants and the victim that the victim voluntarily entered a car with two strange men at 2 a.m. in the parking lot of a topless club. Whatever her initial motive, at some point, according to her, she clearly communicated her lack of consent to proceeding as the men directed. Whatever her sexual past, if the jury accepted that story, conviction was proper. As noted above, the excluded evidence did not serve to explain any physical evidence. Under these facts, exclusion of the victim's past sexual experiences with third persons is not unconstitutional. *See Stephens,* 13 F.3d at 1002 (Indiana's Rape Shield Statute could constitutionally preclude a defendant from making a "generalized inquiry into the reputation or past sexual conduct of the victim in order to avoid embarrassing her and subjecting her to possible public denigration"); *Lewis v. State,* 451 N.E.2d 50, 53 (Ind.1983) (defendant's right to confrontation was not violated when Indiana's Rape Shield Act was applied to prevent general inquiry into the victim's sexual conduct). We do not agree that an alleged prostitute's prior sexual history becomes fair game simply by reason of her prior actions, or that there is any constitutional right to present evidence of past consensual sex with other persons for that reason alone.[9] Accordingly, Williams' consti-

---

7. Williams argues that application of the Rape Shield Rule violates his rights of confrontation and cross-examination. However, because the friend was proffered as a witness by the defense, his claim involving this testimony really implicates the Sixth Amendment right to "have compulsory process for obtaining witnesses in his favor" and his right to present witnesses on his own behalf.

8. This Minnesota Court of Appeals case provides an excellent overview of the various approaches to this issue.

9. We disagree with the conclusion of the Court of Appeals majority that Evidence Rule 412 must yield to the defendant's right to confrontation under the facts of this case. *Williams,* 669 N.E.2d at 182 n. 3. The majority cited dicta in

tutional right to present witnesses was not violated.[10]

The Court of Appeals reversed Williams' convictions because the majority concluded that evidence of the victim's cocaine addiction was admissible as a pertinent character trait of the victim offered by the accused under Indiana Evidence Rule 404(a)(2). *Williams,* 669 N.E.2d at 181–82. The court held that "evidence of the victim's severe (and obviously expensive) addiction to smoking cocaine is relevant to and extremely probative of Williams' consent defense that the victim agreed to have sex with the men in exchange for cocaine or money." *Id.* at 182. However Williams' consent defense does not ultimately turn on the victim's drug use. The evidence of the victim's prior drug use is relevant only to the extent it is offered to show the reason for her past sexual conduct. Money for drugs is one motivation to consent to sex. There are plenty of others. The reasoning of the Court of Appeals would permit evidence of the victim's past sexual conduct to support the theory that the victim consented to the sex acts on the night in question for the same reason as she had allegedly consented in the past. Similar reasoning would subject any complaining victim with an allegedly promiscuous past to unfettered examination of sexual history. That is precisely what Evidence Rule 412 prevents. Where a specific rule—Evidence Rule 412—makes the past sexual conduct of a victim or witness inadmissible, except under specified circumstances,[11] a party cannot circumvent the requirements of

Rule 412(b) by relying on the general doctrines of Rule 404(b). We conclude that the trial court properly excluded evidence of the victim's prior drug history and past sexual conduct pursuant to Indiana's Evidence Rules.

### III. Motion for Continuance

■■■■■ Williams argues that the trial court erred by denying his motion for continuance based upon the need for additional time to obtain an expert. Courts do not favor continuances to allow more time to prepare for trial and should grant such motions only where good cause is shown and it is in the interests of justice. *Timm v. State,* 644 N.E.2d 1235, 1237 (Ind.1994). The trial court's ruling on a continuance will be disturbed only if there is a clear showing of an abuse of discretion. *Poulton v. State,* 666 N.E.2d 390, 393 (Ind.1996).

■■■ Williams joined in co-defendant Edmondson's motion for a continuance so that the defense could obtain an expert witness to testify as to the effects of drug addiction on the ability to recall and motivations of an addict. The trial court denied the motion noting that the case had been pending since the prior year so the defense had adequate time to obtain an expert. Charges were initially filed against Williams in January 1993. The trial court noted that defense counsel became aware of the victim's prior addiction when she was deposed in March 1994. Defense counsel did not request a

*State v. Green,* 163 W.Va. 681, 260 S.E.2d 257, 264 (1979) which in turn cited the Supreme Court of Arizona in *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976), for the proposition that inquiry into an alleged prostitute victim's sexual history is required by the Sixth Amendment. *Pope* did not deal with a rape shield statute or rule. Rather it overruled prior Arizona case law that had admitted the sexual history of any rape victim on the theory that prior consent indicated current consent. In dicta, *Pope* stated, without reference to the Sixth Amendment, that Arizona would permit evidence of a prostitute victim's history to support a consent defense despite the change *Pope* announced as to rape victims in general. 545 P.2d at 953.

**10.** We also note that even in instances where such evidence may be admissible, Evidence Rule 412(b) requires that: 1) the party proposing to offer the evidence must file a motion describing

the evidence at least ten days prior to trial; and 2) the court must conduct a hearing to determine what evidence may be introduced and the nature of questions permitted. Defense counsel acknowledged that no motion describing the evidence had been filed ten days prior to trial, as required by Rule 412(b)(2). Williams was clearly precluded by Rule 412 from introducing any evidence of the victim's past sexual conduct. Furthermore, the constitutionality of requiring pretrial notice by a criminal defendant who intends to offer evidence of past sexual conduct was upheld by the United States Supreme Court in *Michigan v. Lucas,* 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991). Therefore, preclusion of evidence of the victim's alleged sexual history did not violate Williams' right to present witnesses under the Sixth Amendment.

**11.** *See* 2 Weinstein & Berger, Federal Evidence § 404.04[3] (2d ed.1997).

continuance until the first day of trial, August 8, 1994, more than a year and half after the initial charges were filed. Under these circumstances, Williams has failed to show good cause and the trial court properly denied the motion.

## IV. Prosecutorial Misconduct

■■■ Williams next contends that the State engaged in prosecutorial misconduct. First, he argues that the prosecutor made remarks that were unsupported by the evidence. Specifically, he points to the prosecutor's remarks during opening and closing statements that Williams was unbuckling his pants as the victim ran from the car. The trial court is in the best position to evaluate alleged improper arguments to the jury. Thus, the correct procedure to be employed is to request an admonishment, and if further relief is desired, to move for a mistrial. *Isaacs v. State,* 673 N.E.2d 757, 763 (Ind. 1996). Failure to request an admonishment or move for a mistrial results in waiver of the issue. *Id.* Because Williams failed to object at trial, he has waived this issue. It certainly does not rise to the level of "fundamental error" requiring reversal despite the lack of an objection.

■■■ Second, Williams claims that the prosecutor engaged in prosecutorial misconduct by having the victim present false facts to the jury regarding her good character. However, it is unclear from his brief to what false facts he refers. The only record cite in Williams' brief is to a single page in the record, where we find the beginning of the victim's testimony. There is no citation to or argument regarding specific testimony. Because Williams fails to make a cogent argument with appropriate citations to the record, he has waived this issue. Ind. Appellate

Rule 8.3(A)(7); *Marshall v. State,* 621 N.E.2d 308, 318 (Ind.1993).

## V. Sufficiency of the Evidence

■■■ Williams argues that the evidence was insufficient to convict him of attempted criminal deviate conduct and criminal confinement. Many of Williams' contentions rest upon the fact that Edmondson engaged in certain acts which he did not. However, the acts of one accomplice are imputed to all other accomplices when they act in concert in the furtherance of a crime. *Jones v. State,* 536 N.E.2d 267, 270 (Ind.1989), *reh'g denied.* It is not necessary that the evidence show that Williams personally participated in the commission of each element of the offense. *Id.*

### A. *Attempted Criminal Deviate Conduct*

■■■ Williams first argues that the evidence does not support his conviction for attempted criminal deviate conduct [12] because there is no evidence that he engaged in a "substantial step" toward the commission of criminal deviate conduct. He concedes that he asked the victim to perform oral sex on him but argues that "[n]othing else was said or demonstrated ... in furtherance of this request." The victim testified that 1) she was ordered to commit sexual acts with both men simultaneously and 2) while they were giving these orders, Edmondson was holding a gun. *See Johnson v. State,* 272 Ind. 547, 549, 400 N.E.2d 132, 133 (1980) (defendant's command to victim is sufficient to support conviction for attempted criminal deviate conduct). She also testified that as she tried to get away she was forced back into the car and some of her clothing was forcibly removed. This is clearly sufficient

12. The crime of criminal deviate conduct is defined as:
> A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when: (1) the other person is compelled by force or imminent threat of force; (2) the other person is unaware that the conduct is occurring; or (3) the other person is so mentally disabled or deficient that consent to the conduct cannot be given; commits criminal deviate conduct, a Class B felony. However, the offense is a

> Class A felony if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to any person other than a defendant.

IND.CODE § 35–42–4–2 (1993). The relevant portion of the attempt statute provides: "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." IND CODE § 35–41–5–1 (1993).

to show that substantial steps were taken toward the commission of criminal deviate conduct.

Williams next argues that there was insufficient evidence to elevate his conviction to a Class A felony. Criminal deviate conduct becomes a Class A felony "if it is committed while armed with a deadly weapon...." IND.CODE § 35–42–4–2 (1993). The victim testified that Edmondson had a gun in his hand when ordering her to submit to the sex acts. Williams claims that because Edmondson pulled the gun and placed it on the arm rest, he had no control over the weapon. However, the jury could reasonably infer that the gun was initially in Edmondson's control and was intended to remain there. That is enough for Edmondson's attempt even if control of the gun was lost. As noted above, each accomplice is criminally liable for the acts of the other in furtherance of their common objective. *Jones,* 536 N.E.2d at 270. Thus, Williams is liable for the presence of the gun and his conviction for a Class A felony is supported by the evidence.

### B. Criminal Confinement

■ Finally, Williams contends that the evidence is insufficient to support his conviction for criminal confinement, a Class B felony.[13] He specifically argues that "no one forced the victim to get into [the] Defendant's car." While it may be true that the victim initially entered the car voluntarily, at some point in time she decided she wanted to leave. When she attempted to escape, she was pulled back into the car. She was then in the back seat struggling with Edmondson and screaming for help, as Williams drove to the park. Edmondson then held a gun as the men told her what they wanted her to do. From this evidence, the jury could reasonably infer that the two, including Williams, committed criminal confinement by means of a deadly weapon.

**13.** The Indiana Code defines criminal confinement as: "A person who knowingly or intentionally: (1) confines another person without the other person's consent; or (2) removes another person, by fraud, enticement, force, or threat of

### Conclusion

Transfer is granted. The Court of Appeals opinion is vacated and Williams' convictions for attempted criminal deviate conduct and criminal confinement are affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

force, from one (1) place to another; commits ... a Class D felony." IND CODE § 35–42–3–3 (1993). The offense becomes a Class B felony "if it is committed while armed with a deadly weapon." *Id.*